[Civ. No. 209.   Third Appellate District.—May 15, 1906.]

## S. S. CEDERBURG, Respondent, v. MANUEL DUTRA, Appellant.

WATER RIGHTS—EASEMENT—NATURAL FLOW OF SURFACE WATER—DEFINITE CHANNEL—INJUNCTION.—An owner of upper land has an easement over the lower adjacent land to discharge surface water as it is accustomed naturally to flow in a definite channel, which is the result of natural causes, or artificial aid of natural causes, which does not injuriously affect the adjacent land, and may enjoin interference with the natural flow of the water in such definite channel by the owner of the adjacent land.

ID.—SUPPORT OF FINDINGS—NATURAL WATERCOURSE—ADAPTATION FOR DRAINAGE—PRESCRIPTIVE USE OF DITCH.—Where all the features and characteristics of a watercourse clearly appear, and findings as to the watercourse and its natural adaptation for drainage of riparian land are supported by the evidence, and are sufficient to support the judgment for plaintiff, it is immaterial whether a finding that a ditch cut by plaintiff (which had for its object to shorten the flow of water into the watercourse) was in adverse use for more than the statutory period was or was not sustained by the evidence.

APPEAL from a judgment of the Superior Court of Kings County, and from an order denying a new trial.   M. L. Short, Judge.

The facts are stated in the opinion of the court.

Bradley & Farnsworth, R. J. Hudson, and J. F. Pryor, for Appellant.

Irwin & Irwin, for Respondent.

CHIPMAN, P. J.—Action for perpetual injunction restraining defendant from constructing or maintaining a dam in and across a certain channel.   Plaintiff had judgment from which and from the order denying his motion for a new trial, defendant appeals.

The court, among others, made the following findings:

## "IV.

"That there is a watercourse having its source in Kings river at a point about five (5) miles north of the lands of plaintiff, extending in a southerly direction down to the lands of plaintiff, thence in a southeasterly direction over and across the lands of plaintiff, and down to and over and across the lands of defendant, and thence emptying the waters which flow therein into Cross creek at a point about two (2) miles southeast of the lands of defendant. That at the source or head of said watercourse, it has precipitous banks ranging from two (2) to five (5) feet in height, and said watercourse has a well-defined channel from its said course down to and over and across the lands of plaintiff; and down to and over and across and beyond the lands of defendant.

## "V.

"That during the irrigating and winter and spring seasons of each year, large quantities of water run into and flow along and in and through said channel, and over and across the lands of plaintiff, and thence along and through said channel down to and over and across the lands of said defendant; and that said watercourse has been in existence and maintained over and across the premises of plaintiff and the premises of said defendant for more than six (6) years last past.

## "VI.

"That in the northeast corner of said quarter of land owned by said plaintiff, there is a depression or swale and that during the irrigating and winter and spring seasons of each year, large quantities of percolating water accumulates and has accumulated in and upon said premises of plaintiff and that this swale is connected with and forms a part of the channel mentioned and described in Finding IV herein, and that the said plaintiff in or about the year 1896, for the purpose of draining and freeing his said lands from said percolating waters, and causing the water that flows in the said channel which spreads out in said swale on said plaintiff's land to flow in a more direct and speedy manner over plaintiff's said land and by a shorter route, dug and constructed an artificial ditch beginning at the east line of his said premises and from a point in

said depression or swale extending in a southeasterly direction over and along the lands of one Dorman, connecting said artificial ditch with said watercourse hereinbefore described, at a point about two hundred (200) feet north of the north line of the lands of said defendant; and that said artificial ditch has been kept and maintained by said plaintiff openly, peaceably, continuously, uninterruptedly, and adversely to the defendant and to the whole world for more than six (6) years last past, for the purpose of conducting said percolating water so accumulated in said depression or swale down to and into said watercourse hereinbefore described.

## "VII.

"That the defendant threatens to unlawfully, and without the consent of plaintiff, erect, build and construct across said watercourse a large dam extending across the entire width of said watercourse, and of such size and strength and material as to completely obstruct the flow of water running, or which might and will run in, through, along and down said watercourse."

Appellant contends that the evidence fails to show the existence of a natural watercourse. The court did not in terms find the existence of a natural watercourse, but did find that the channel involved was a watercourse. The pleadings were framed and the trial seems to have proceeded on the theory that the channel referred to is a natural watercourse. The distinction is not material, for the definition of a watercourse, such as is here in question, calls for such a drainway or runoff channel as is the result of natural causes. There was much testimony tending to show that the channel in question has been known in past years as Burris slough and that it formed a natural drainage from Kings river to Cross creek. Witness McQuiddy testified: "I have known that slough for more than twenty-eight years; the head of the slough is on the south bank of Kings river; its course for a distance is almost south and then it bears off to the southeast for a mile or so, then runs pretty nearly due south to Cross creek. It (Cross creek) is a natural stream that lays a few miles south of Kings river; Kings river is also a natural stream. This slough received its waters from Kings river and emptied into Cross creek. When I first knew this slough it was a well-defined channel." It appeared from the testimony of this

and other witnesses that in its course the channel spread out
in places and was quite shallow, and again would narrow down
to a few feet with well-defined banks and so continue on its
course to Cross creek, varying in width, but always confining
the water in a more or less plainly defined channel to Cross
creek, into which it discharged the flood waters coming from
Kings river and the rainfall and seepage water which drained
into this slough.   Many years ago a levee was constructed at
the head of the slough on Kings river, which practically shut
off the flow into the slough from that river, except in seasons
of extreme flood waters, but the slough still remained as a
natural drainage for the rainfall and for water seeping or per-
colating from the bordering land which was being irrigated
by artificial ditches.   The general character and the natural
uses of the slough for drainage purposes were not changed
by the levee at its head.   The evidence showed that the ditch
cut by plaintiff to shorten the channel at the point above de-
fendant's land had for its object the hastening of the flow of
water at that particular point, but did not injuriously affect
defendant's land.   It was stated in *Sanguinetti* v. *Pock,* 136
Cal. 466, [89 Am. St. Rep. 169, 69 Pac. 98], as "settled law
in this state that plaintiff as the owner of the upper land
has an easement over the lower adjacent land of defendant
to discharge surface water as it is accustomed naturally to
flow, and defendant had no right to interrupt such flow to
plaintiff's injury."   (Citing cases.)   It was said in *Los Ange-
les Assn.* v. *Los Angeles,* 103 Cal. 461, [37 Pac. 373] : "There
must be a stream usually flowing in a particular direction,
though it need not flow continually.   It may sometimes be
dry.   It must flow in a definite channel, having a bed, sides
or banks, and usually discharge itself into some other stream
or body of water.   It must be something more than a mere
surface drainage over the entire face or tract of land, occa-
sioned by unusual freshets or other extraordinary causes."
In *Sanguinetti* v. *Pock, supra,* the opinion pointed out the
features wanting to make the drainage there involved a water-
course.   But here the features or characteristics of what the
law defines to be watercourse clearly appear, and we think
the evidence supports the findings.

It is not necessary to consider whether or not the finding
that the ditch cut by plaintiff has been in adverse use for more
than the statutory period is sustained by the evidence.   The

findings as to the watercourse and its natural adaptation for drainage of the riparian land are sufficient to support the judgment.

Appellant calls attention to the recent case of *Wood* v. *Moulton,* 146 Cal. 317, [80 Pac. 92]. An examination of the facts in that case will show that there was no pretense of the existence of a natural drainage channel by which the water complained of was accustomed to flow across plaintiff's and defendant's lands.

The judgment and order are affirmed.

Buckles, J., and McLaughlin, J., concurred.