[Civ. No. 3172.   First Appellate District, Division One.—December 22, 1919.]

## J. C. C. JAXON et al., Respondents, v. EBEN P. CLAPP et al., Appellants.

[1] EASEMENTS — ADJACENT LANDS — NATURAL FLOW OF SURFACE WATERS.—Where two adjacent parcels of land belong to different owners, one being lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass over the lower tract, the owner of the higher land has an easement by virtue of which storm waters from such land may be permitted to flow on to the lower tract, which latter is charged with a corresponding servitude.

[2] ID.—ERECTION OF OBSTRUCTIONS—CHANGE OF NATURAL FLOW.— Such dominant tenement, however, has no right to erect a brick wall along the boundary line of his property, thereby causing an accumulation of storm waters in large and artificial quantities at a particular spot, which are discharged upon the adjoining land with force and in a different form from that prevailing under natural conditions, whether such adjoining land be a city lot or a larger open tract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. G. Cruickshank and Lloyd W. Brooke for Appellants.

Willis S. Tyler for Respondents.

KERRIGAN, J.—This is an appeal by defendants from a judgment in favor of the plaintiffs by which they recovered

———————

2.   Right to collect or divert surface water in masses, note, 21 L. R. A. 595.

damages for injuries to their land through the acts of the defendants.

The defendants are owners of a certain lot No. 9 in the city of Pasadena, fifty feet wide, fronting on Elevado Drive, and extending back 170 feet deep, which formed a part of their residence premises. The plaintiffs are the owners of a lot of equal size, No. 10, immediately adjoining to the east, upon which was located their bungalow home. The defendants erected a brick wall eight feet six inches high and approximately eight to twelve inches in thickness along the eastern boundary of their lot. In building this wall the defendants had left three to five inch openings or weep holes every three feet extending along the whole length of the wall, and several two-inch pipe openings in the foundation of the wall through which the rain-water draining naturally from lot 9 would flow on to lot 10. The plaintiffs alleged and sought to prove in their first cause of action that the defendants had so changed the grade and character of the surface of their lot as to cause the rain-waters to flow upon plaintiffs' lot, but the court found that these allegations were untrue, and that the flow of rain-water from defendants' lot was natural and not by reason of any change of grade or of the character of the surface soil.

The plaintiffs alleged in their second cause of action that the brick wall erected by the defendants as described above caused the water to concentrate and flow upon the plaintiffs' property with resulting damage to their bungalow. The finding of the court was "that said water was poured upon said lot 10 in an unusual quantity and only by and through the medium of the said openings and the said drainage tubes constructed in said wall by the said defendants, and that as a result thereof the plaintiffs were damaged in that the waters did run through said draining tubes and openings against the western wall of the house of said plaintiffs situate on lot 10, and did run under the said house and did damage the said house in the sum of and to the extent of six hundred dollars."

Defendants contend that the evidence is insufficient to sustain the findings that any damage to the plaintiff's house was the result of water flowing from defendants' lot in unusual quantities caused by the construction of the brick wall,

or that the damage amounted to six hundred dollars. A map was introduced in evidence and constantly referred to during the trial of the case, but it has not been incorporated in the transcript, and it is, therefore, difficult to obtain a clear idea of the evidence, but we are satisfied that the finding of the court is sustained as to the damages allowed. The testimony is not very definite, but it may be said that one of the plaintiffs and another witness testified to an amount of damage in excess of that for which recovery was given, and their testimony was not contradicted.

With reference to the sufficiency of the evidence as to the cause of the damage, that, also, is not as satisfactory as might be wished for. Mrs. Jaxon testified that the storm waters flowing from defendants' lot on to their lot had caused damage each year since they had owned the property, and her husband in his testimony admitted that his property had suffered damage from flood waters at least on one occasion prior to the erection of the wall. The record also contains evidence that the rainfall which preceded the damage to plaintiffs' home for which the action was brought was unusually heavy and of an extraordinary character—the inference being that the very heavy rainfall caused the damages, and that they would have occurred even if the wall had not been erected. On the other hand, there is evidence in the record which tends to show that by reason of the wall the course of the flow of storm waters was changed so that the water, instead of flowing off the land generally and naturally was gathered in a large pool on defendants' lot against the brick wall from which it escaped through the holes in the wall and poured on to plaintiffs' lot and against their house with great velocity, flooding the cellar and causing substantial damage. We are constrained, therefore, to hold that there is sufficient evidence to sustain the findings of the court in favor of the plaintiffs.

We think, too, that the authorities support the conclusion reached by the court. [1] The general rule is that where two adjacent parcels of land belong to different owners, one being lower than the other, and the surface water from the higher tract has been accustomed by a natural flow to pass over the lower tract, the owner of the higher land has an easement by virtue of which storm waters from such land

may be permitted to flow on to the lower tract, which latter is charged with a corresponding servitude. (*Ogburn* v. *Connor*, 46 Cal. 347, [13 Am. Rep. 213].) [2] Conceding, however, as seems to be the case, according to the very generally adopted rule in this country, that this doctrine has no application to city lots, and that the owner of such a lot, in the exercise of proper dominion over his property, may make changes and alterations in the surface thereof essential to its enjoyment, and which might interfere with the flow of water from or on to the adjoining lot, without thereby rendering himself liable in damages to the owner thereof (*Ogburn* v. *Connor*, *supra*), still in the case at bar the court found that the damage complained of was not caused by any change in the grade of defendants' lot or by any alteration of its surface, but by the erection of the aforesaid wall, which caused an accumulation of storm waters in large and artificial quantities at a particular spot, and which were discharged with force and in a different form from that prevailing under natural conditions. This, we think, the owner of the dominant tenement has no right to do, whether the adjoining land be a city lot or a larger open tract. (*Ogburn* v. *Connor*, *supra*; *Wood* v. *Moulton*, 146 Cal. 319, [80 Pac. 92].)

For the reasons given the judgment is affirmed.

Waste, P. J., and Wood, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1920.

Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.