[Civ. No. 1482.   Third Appellate District.—July 26, 1916.]

S. E. SLADE LUMBER COMPANY (a Corporation), Respondent, v. OSCOE E. DERBY et al., Appellants.

FRAUD—TRANSFER OF CORPORATE STOCK—INTENT TO DEFRAUD CREDITORS —SUPPORT OF FINDING.—In an action by a judgment creditor to have a transfer of corporate stock made by a husband to his wife declared void on the ground that the transfer was made without consideration and at a time when the defendant was indebted to the plaintiff and to others in a large amount, a finding that the gift was made with intent to delay and defraud creditors is supported by evidence that the defendant owned one-third of the stock of the corporation, that the year before the transfer the corporation lost one-third of the amount for which it was capitalized, and that the defendant, fully aware of the financial condition of the corporation, a few months before the transfer offered to plaintiff all his stock if plaintiff would assume his liabilities thereon.

ID.—TRANSFER WITH INTENT TO DEFRAUD—INSOLVENCY IMMATERIAL.— A solvent person may transfer property with intent to hinder his creditors, as well as one who is insolvent.

ID.—EVIDENCE OF FRAUD.—The question whether a conveyance is in fraud of the rights of a creditor is one of fact, and it can only be inferred in most cases from all the attending facts and circumstances.

ID.—JUDGMENT AND EXECUTION—ADMISSION IN EVIDENCE.—In an action by a judgment creditor to set aside a transfer on the ground of fraud, it is not error to admit in evidence the judgment, and writs of execution in the action in which the judgment was obtained, as it

is necessary to enable such a creditor to maintain the action for him to show that he was a judgment creditor and that he had exhausted his legal remedies to obtain satisfaction of the judgment.

Id.—Admission of Evidence—Liberal Rule.—In an action to set aside transfers on the ground of fraud, great latitude should be allowed in the admission of circumstantial evidence, and objections to questions on the ground of irrelevancy are not favored.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Oliver Ellsworth, and Snook & Church, for Appellants.

Corbett & Selby, and Fitzgerald, Abbott & Beardsley, for Respondent.

ELLISON, J., *pro tem.*—The plaintiff, as a judgment creditor of the defendant, Oscoe E. Derby, brought this suit in equity to have declared void a transfer of 99 shares of the capital stock of the Derby Estate Company (a corporation), made by said Oscoe E. Derby to his wife, the defendant Mary L. Derby. As grounds for the relief asked the plaintiff alleged that said transfer was made without consideration, at a time when the defendant Oscoe was indebted to the plaintiff in a large amount, and to others; that the gift of the shares of stock in said corporation was made by said defendant Oscoe to his wife for the purpose of and with the intent to hinder and defraud his creditors and particularly this plaintiff, in contemplation of insolvency and while the said defendant was insolvent. The findings of the trial court were in accordance with the allegations of the complaint, and a decree was given and made declaring said transfer to be void as to the plaintiff creditor, and said 99 shares of the capital stock of the Derby Estate Company subject to the payment of the plaintiff's judgment. The appeal is from the judgment and also from an order denying a motion for a new trial. For brevity, the defendant Oscoe E. Derby will be referred to as the defendant.

The principal point relied upon by appellants for a reversal is the claim made that the findings of the court are not supported by the evidence. The record is quite large, and it is

impossible, in an opinion of reasonable length, to review all the testimony. The following salient facts may be stated in narrative form and give a general impression of the situation: In the year 1883 one E. M. Derby, the father of the defendant, died. After the settlement of his estate in the probate court, and in the year 1890, his heirs formed the corporation, Derby Estate Company, to take over and manage all the property of the estate of E. M. Derby except his interest in the lumber business. To it was transferred all the estate property with the above exception, and the stock of the corporation, six hundred shares, was issued as follows: three hundred shares to Nancy M. Derby, widow of the deceased; one hundred shares to the defendant, a son of the deceased; one hundred shares to Augustus B. Derby, a son of deceased; ninety-five shares to Lizzie D. Harmon, a daughter of deceased, and five shares to her husband, A. K. P. Harmon.

At the time of his death E. M. Derby was engaged in the lumber business with one G. H. Payne, and the business was conducted after his death by his family and said Payne, until December 13, 1891, at which time the E. M. Derby & Co. corporation was formed and all the property and assets connected with the lumber business transferred to it. The six hundred shares capital stock of the last-named corporation were issued to the following persons: two hundred shares to O. E. Derby; 201 shares to A. B. Derby; 197 shares to George H. Payne; one share to Nancy M. Derby and one share to Lizzie D. Harmon, the stock having a par value of one hundred dollars per share and the capital stock being sixty thousand dollars. George H. Payne died at some date prior to January, 1909.

After the creation of the E. M. Derby & Co. corporation, it conducted a large lumber business in Alameda County. In the course of its business it bought much lumber from the plaintiff and from E. J. Dodge Co., a corporation. The purchases from the plaintiff from January 25, 1907, to January 13, 1909, amounted to $96,196.02, and during the same period payments were made from time to time which left a balance due the plaintiff on the last-named date of about seventy-two thousand dollars, and after that date lumber was sold by the plaintiff to said corporation amounting to $10,689.09. The

defendant was legally liable as a stockholder for the payment of one-third of this indebtedness. He testified that he was aware of his stockholder's liability. The witness, George T. Klink, an accountant appointed by the court to investigate the condition of E. M. Derby & Co.'s affairs, presented an itemized statement which showed that the corporation in its business transactions had been losing, recently, large sums of money. His report showed that during the year 1908 there was an actual loss of at least as much as twenty-two thousand dollars, and in addition to this there was written off the books, uncollectible notes, $10,914.79, and fourteen thousand dollars of accounts deemed worthless. These notes and accounts were the accumulations of several years. The result of this witness' investigations was that, on January 13, 1909, the E. M. Derby & Co. corporation had assets of the total value of $187,781.76 and liabilities amounting to $177,598.76, leaving a book excess of assets of only about eleven thousand dollars. Counsel, in trying to show on the one side that the corporation was solvent and on the other that it was insolvent, have presented other figures which it would be necessary to consider if we were at this point endeavoring to show solvency or insolvency. But as, for present purposes, we are only presenting figures to show that the corporation had a large indebtedness as compared with its assets, the above figures are sufficient for the purpose.

On January 13, 1909, the defendant made a gift to his wife, the other defendant, of his 99 shares of the corporate stock of the Derby Estate Company, being the shares of stock involved in this litigation. The evidence shows it had a value of about twenty-five thousand dollars. Prior to that time, and on the sixteenth day of November, 1908, the defendant gave to plaintiff a written option by which he offered to transfer to plaintiff all his stock in the E. M. Derby & Co. corporation in consideration that plaintiff would assume all of his liabilities entailed by the stock—"The idea of the above proposition being that myself and brother will be willing to release all claims to our holdings in E. M. Derby & Co. if you will assume all liabilities thereof." On May 24, 1909, the defendant transferred all his stock in the E. M. Derby & Co. to Miss G. V. Rose, a stenographer in the office of his attorney. This transfer was made without consideration—a gift.

January 15, 1909, the defendant deeded to his mother real estate worth eight thousand dollars, and she, on the same day, conveyed it to the Derby Estate Company. By these two deeds and the previous transfer of defendant's stock in the Derby Estate Company to his wife she got the full benefit of the transfer of the real estate.

August 11, 1909, the E. M. Derby & Co. transferred all its real and personal property to J. F. Carlston and Oliver Ellsworth, in trust for its creditors. September 8, 1909, all the real estate of E. M. Derby & Co. and of the defendant was attached on claims held by Central Bank and Rogers, amounting to fifty-five thousand dollars, and sold under execution. The defendant, in addition to his stockholder's liability in E. M. Derby & Co. had indorsed notes for said company amounting to fifty-five thousand dollars, and was individually liable thereon. He also owed his sister, Mrs. Harmon, twelve thousand dollars, secured by mortgage on certain real estate. He also owed one-third of an indebtedness of the E. M. Derby Co. to E. J. Dodge Co. of $10,770.40, his proportion thereof being $3,569.12. After the transfer of all of the assets of the E. M. Derby & Co. to J. F. Carlston and Oliver Ellsworth, trustees in trust for the creditors of the corporation made, as above stated, on August 11, 1909, the plaintiff received from said trustees different sums of money which were credited on the indebtedness of E. M. Derby & Co. to it. These payments, together with other money secured between January 13, 1909, and August 11, 1909, reduced the indebtedness of E. M. Derby & Co. to the plaintiff to $36,187.21. On April 13, 1910, the plaintiff brought an action against the defendant to recover, upon his stockholder's liability, his proportion of the above indebtedness, and, on July 29, 1910, secured a judgment therein against the defendant for the sum of $12,358.40. On May 10, 1910, the plaintiff having obtained an assignment to it of the claim of E. J. Dodge Co. against E. M. Derby & Co., brought an action against the defendant to recover judgment against him for his proportion thereof as a stockholder, and, on July 29, 1910, recovered a judgment against him for $3,671.09. Upon these two judgments last mentioned the plaintiff brings this suit as a judgment creditor to set aside the transfer of the 99 shares of stock of E. M. Derby Estate Company by defendant to his wife. The figures here-

inbefore given may not in all cases be wholly accurate but they are sufficiently accurate for present purposes.

The foregoing statement does not contain a recital of all the facts proved tending to support plaintiff's case. In fairness to the defendant, it should be stated that on the trial he gave more or less plausible reasons and explanations for the various transfers of property made by him, but the trial judge was at liberty not to accept them at their face value, and evidently did not.

We think this bare recital of the history of events, with the inferences that may legitimately and properly be drawn therefrom, show that the court had ample justification for its finding that the gift of the 99 shares of stock was made with intent to hinder and delay the creditors of defendant in collecting their debts. In fact, it is difficult to see what other conclusion could properly be reached.

The defendant owned one-third of the stock of a corporation engaged in the active business of buying and selling lumber. It was losing money rapidly, the year before the stock was transferred to his wife having lost twenty thousand dollars, or one-third of the amount for which it was capitalized. The defendant was fully aware of the condition of the company. It was, as counsel express it, a "sinking ship," and defendant fully realized and appreciated the situation— so much so that, in November, 1908, he offered, in connection with his brother, to transfer to the plaintiff all his stock in the corporation if plaintiff would assume all of his liabilities entailed by the stock. One witness testified that, in addition to the transfer of all his stock to get released from his stockholder's liability, the defendant and his brother also offered to transfer to plaintiff their personal real estate holdings, valued at thirty-eight thousand dollars. This was denied by defendant but, for aught we know, the court may have believed the witness. This conduct shows exactly what the defendant believed to be the condition of the company, and gives an insight, and a clear one, into his state of mind and desires. Not having made the suggested deal with the plaintiff, in January, 1909, he gave to his wife the stock in dispute. Next he deeded to his mother certain real estate without consideration, and next made a stenographer in the office of his attorney a present of all of his stock in the E. M. Derby & Co.; and all these things were being done when he was largely

indebted as herein indicated. But one inference can be properly drawn from this conduct.

We deem it unnecessary to go into a close mathematical calculation to figure out on a close margin whether the defendant at the time of the transfer might have had a small excess of assets above his liabilities. A solvent person may transfer property with intent to hinder his creditors, as well as one who is insolvent. "It is obvious, therefore, that the question upon which the case must turn is whether the conveyance is in fraud of the rights of the plaintiff as a creditor. This, under our statute, is a question of fact (Civ. Code, sec. 3442), that is to say, a question of intent." (*Knox* v. *Blanckenburg*, 28 Cal. App. 301, [152 Pac. 62].) It is not often that direct proof of fraud can be obtained. People do not in such cases proclaim their intent. It can only be inferred in most cases from all the attending facts, circumstances, and conditions and by ascribing to the conduct of people those motives which would ordinarily be the motives of others doing like things under like circumstances.

Appellant assigns as error the admission in evidence of judgment, writs, and execution in the suit brought by plaintiff to obtain the judgment, the foundation of the suit. To enable the plaintiff to maintain this suit it was necessary for him to show that he was a judgment creditor and that he had exhausted his legal remedies to obtain satisfaction of his judgment. Some other objections are raised as to the admission of testimony, but as most of them had a bearing upon the question of insolvency, they need not be further considered. In this class of cases a wide latitude is permissible. "In litigations of the class under consideration, great latitude should undoubtedly be allowed in regard to the admission of circumstantial evidence for the purpose of proving participation in manifest fraud. Objections to testimony as irrelevant are not favored in such cases, since the force of circumstances depends so much upon their number and connection. The evidence should be permitted to take a wide range, as in most cases fraud is predicated on circumstances, and not upon direct proof." (*Bush & Mallett Co.* v. *Helbing*, 134 Cal. 676, [66 Pac. 967].)

We are of the opinion that the finding of the court that said 99 shares of stock were transferred by the defendant to his wife in fraud of the rights of his creditors, and especially of

the plaintiff, is sustained by the evidence.   Finding no reversible error, the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 21, 1916.