[Civ. No. 2375.   Third Appellate District.—December 1, 1921.]

# B. M. BENSON, Respondent, v. FRANK G. HARRIMAN et al., Appellants.

[1] FRAUDULENT CONVEYANCE—ACTION TO SET ASIDE—PLEADING—EX-HAUSTION OF LEGAL REMEDIES.—In an action by a judgment credi-tor to set aside an alleged fraudulent transfer, the failure of the complaint to show an exhaustion of legal remedies is without preju-dice, where it is shown by the evidence that the defendant had transferred, or, at least, attempted to transfer, all of his property prior to the issuance of execution, and also that plaintiff had re-sorted to proceedings supplementary to execution.

[2] ID.—EXISTENCE OF OTHER PROPERTY—IMMATERIALITY.—If a con-veyance is made with intent to defraud creditors, it is void, not-withstanding the debtor has other property ample in amount to satisfy his creditors.

[3] ID. — EFFECT OF TRANSFER — CONTEMPLATION OF INSOLVENCY. — Where a transfer renders one insolvent his insolvency is contem-plated by the very act of making the transfer.

[4] ID.—INTENT—WHEN IMMATERIAL.—Intent is immaterial where the transfer is made without consideration and in contemplation of in-solvency.

[5] ID. — ACTION TO SET ASIDE FRAUDULENT TRANSFER — ISSUES IN FORMER ACTION—RETRIAL.—In an action by a judgment creditor to set aside an alleged fraudulent transfer, the defendant cannot retry issues raised and decided in the former action, in the ab-sence of any allegation of extrinsic fraud in obtaining the judg-ment.

[6] ID.—LACK OF CONSIDERATION—INTENT TO DEFRAUD—SUFFICIENCY OF EVIDENCE.—In this action by a judgment creditor to set aside an alleged fraudulent transfer, the evidence is sufficient to support the findings that the transfer was made without consideration and for the purpose of defrauding plaintiff.

[7] ID.—EXISTENCE OF INDEBTEDNESS—PRESUMPTION OF FRAUD.—The existence of an indebtedness at the time of a voluntary conveyance creates at least a *prima facie* presumption of fraud.

[8] ID. — ACTION TO SET ASIDE FRAUDULENT TRANSFER—PLEADING — SUFFICIENT COMPLAINT.—The allegation in a complaint by a credi-tor to set aside a transfer made with intent to defraud creditors that plaintiff has recovered a judgment on his debt, that it is un-paid, and that an execution has been issued thereon and has been returned unsatisfied, is sufficient to show that plaintiff is entitled to appeal to equity.   (Opinion of supreme court on denial of hear-ing.)

[9] ID.—UNLIQUIDATED NATURE OF DEBT—IMMATERIALITY.—In an action to set aside a transfer made with intent to defraud creditors, a judgment for the plaintiff in a prior action for legal services was proof that the defendant was indebted to plaintiff on the contract at the time the action was begun, and it was immaterial to the right to maintain the action to set aside the transfer that the debt was for the reasonable value of the services and to that extent unliquidated. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Tuolumne County. G. W. Nicol, Judge. Affirmed.

The facts are stated in the opinion of the court.

Albert L. Johnson for Appellants.

Hawkins & Hawkins for Respondent.

BURNETT, J.—The action was brought by a judgment creditor to set aside an alleged fraudulent transfer, and from the judgment in favor of plaintiff the appeal has been taken.

[1] A general demurrer was interposed to the complaint, and the first point made is that the trial court erred in overruling it. The objection upon which appellants seem to rely chiefly is that it does not appear in the complaint that there was an exhaustion of legal remedies so as to authorize the equitable action. The allegation in that respect is: "That execution was issued upon said judgment on the twenty-first day of December, 1917, and placed in the hands of the sheriff of the county of Stanislaus, state of California for execution,' and said execution was returned unsatisfied." This seems to be sufficient to make out a *prima facie* case of insolvency. (*Calkins* v. *Howard,* 2 Cal. App. 233 [83 Pac. 280].) But if it should be thought that the complaint was incomplete in that respect, it is quite apparent that it was entirely without prejudice to appellants, since the evidence shows that the judgment debtor had transferred, or, at least, had attempted to transfer, all of his property prior to the issuance of said execution. Since he had in fact rendered himself insolvent he cannot complain because greater efforts were not made by the creditor to collect his judgment by legal proceedings before resorting to an action in equity. According to appellant's own theory

of the case, any additional effort would have been entirely unavailing, and the failure to do an idle act cannot be the basis for a valid objection. We may add that the evidence shows that respondent resorted also to supplementary proceedings contemplated by section 714 et seq. of the Code of Civil Procedure and thereby any defect in the complaint in its failure to so allege was effectually cured.

[2] Moreover, the rule in this state is that if a' conveyance is made with intent to defraud creditors, it is void, notwithstanding the debtor has other property ample in amount to satisfy his creditors. (*Bekins* v. *Dieterle,* 5 Cal. App. 690 [91 Pac. 173]; *Slade Lumber Co.* v. *Derby,* 31 Cal. App. 155 [159 Pac. 881]; *Johns* v. *Baender,* 40 Cal. App. 790 [182 Pac. 55]; *First Nat. Bank of Los Angeles* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980].) The authorities are fully reviewed in the foregoing decisions and the conclusion reached as stated in 2 Bigelow on Fraud, page 393: "Indeed, it matters not, where personal intent to defraud is shown, that the fraudulent conveyance, if allowed to stand, would not harm anyone, by reason of the fact that the debtor has other property ample in amount within the reach of his creditors." These authorities hold that the possession of other means, though competent as evidence to rebut the inference of fraudulent intent, is not conclusive against it, and, if the fraudulent intent exists the conveyance is void, notwithstanding the debtor may own other property. In this connection we may say that the complaint is full and explicit in its allegations of the fraudulent intent with which the transfer was made.

Appellants are mistaken in the assertion that these earlier cases have been overruled by *Evans* v. *Sparks,* 170 Cal. 532 [150 Pac. 372]. On the contrary, the court held therein that fraud may be shown and may invalidate the deed, even where the grantor does not entirely strip himself of assets, citing *First Nat. Bank* v. *Maxwell, supra;* but the evidence was considered insufficient to support the finding that a fraudulent intent existed.

In fact, however, the complaint is broad enough to fall within the contemplation of section 3439 and also section 3442 of the Civil Code. As to this latter consideration, we notice that the complaint alleges that the transfer was made "without any consideration, and that by reason of

said conveyance and transfer the defendant, Frank G. Harriman, rendered himself insolvent." Said section 3442 provides that a transfer of property without valuable consideration "by a party while insolvent or in contemplation of insolvency shall be fraudulent and void as to existing creditors."

[3] Where the transfer renders one insolvent his insolvency is contemplated by the very act of making the transfer. (*Knox* v. *Blanckenburg*, 28 Cal. App. 298 [152 Pac. 59].)

[4] It is also true that the intent is immaterial where the transfer is made without consideration and. in contemplation of insolvency. (*Atkinson* v. *Western Development Syndicate*, 170 Cal. 503 [150 Pac. 360].)

Upon either of these theories, we think the complaint is amply sufficient to state a cause of action.

Some objection is made to the action of the court in granting a preliminary injunction restraining the defendant "from disposing of, selling, making away with, secreting, assigning, hypothecating" said bonds, but since the court, after full hearing, granted a perpetual injunction, the action as to the former becomes unimportant and the inquiry here should be limited to the final determination of the controversy. (*Sheward* v. *Citizens' Water Co.*, 90 Cal. 635 [27 Pac. 439]; *County of Tehama* v. *Sisson*, 152 Cal. 167 [92 Pac. 64]; *Knight* v. *Cohen*, 5 Cal. App. 296 [90 Pac. 145].)

[5] There is no merit in the claim that the court erred in striking out portions of the answer of appellants. The character of such averments may be shown by the following quotation: "That on or about the 17th day .of January, 1917, plaintiff commenced an action in the Superior Court of the State of California, in and for the County of Stanislaus, against said defendants Frank G. Harriman and John T. Harriman and the Modesto Bank, a corporation, for damages for an alleged breach of contract for an alleged violation of the said purported contract heretofore mentioned. That said action was subsequently dismissed as to the defendant, John T. Harriman, and the Modesto Bank and upon trial before a jury a verdict was rendered by said jury in favor of plaintiff and against the defendant for the sum of Four Thousand Four Hundred eighty-nine

Dollars and eighty-five cents, ($4489.85), damages and costs and judgment was entered in said action accordingly. That it was owing to the said fraudulent acts of plaintiff and false testimony given by him and in his behalf and the bias and prejudice of said jury against this defendant and in favor of said plaintiff that such verdict was rendered. That by reason of said facts said judgment was and is inequitable and unjust and should not be enforced by a court of equity.'' They all embrace matters of defense to the action which resulted in a verdict and judgment for plaintiff, and manifestly such issues could not be retried in this action based upon said judgment. Frank G. Harriman had full opportunity to present his defense, and it could not be relitigated in a subsequent action in the absence of any allegation of ''extrinsic'' fraud in obtaining said judgment.

[6]   Likewise, we think there is no merit in the contention that the evidence is insufficient to support the findings of the court that the transfer of the bonds, stocks, and securities was made without consideration and for the purpose of defrauding plaintiff and while the said Benson was a creditor of said Frank G. Harriman, and that by said transfer and others, which are set out in the findings, the said Harriman ''became insolvent and rendered himself insolvent and the said Frank G. Harriman has no property of any kind whatever and by reason of said transaction thereby rendered himself execution proof; that by reason of the transfer of said bonds, stocks, and securities to the defendant, John T. Harriman, he thereby placed without his possession all of the property subject to execution in this state, and the transfer of said bonds, stocks, and securities to the said John T. Harriman proximately resulted in depriving B. M. Benson from collecting his judgment from the defendant, Frank G. Harriman.''

We have carefully read the record and can readily understand how the trial court reached such conclusions. The evidence warrants this statement of the facts substantially as made by respondent: The plaintiff was an attorney at law residing at Portland, Oregon, in April, 1914, at which time he was employed in writing by said Frank G. Harriman to act for him as his attorney in all matters relating to the settlement of the estate of one C. H. Fellows, deceased, in the

state of Massachusetts. After plaintiff had performed certain services in pursuance of said employment he was discharged without cause and other attorneys employed by said Frank G. Harriman. Thereafter, on January 17, 1917, plaintiff commenced an action against the said Harriman in the superior court of Stanislaus County for the recovery of his attorney's fee. Harriman having left the state, plaintiff followed him to Massachusetts and there brought suit for the same purpose. After Harriman was served in Massachusetts he came back to California and immediately attempted to deliver $15,000 worth of bonds to his son, John T. Harriman. The defendant, Frank G. Harriman, answered the complaint filed in Stanislaus County and the case was tried before a jury and a verdict rendered for the plaintiff for $4,439 on November 28, 1917, and judgment was entered and docketed on the same day. On December 21, 1917, an execution was issued and placed in the hands of the sheriff of said county for service and was returned unsatisfied, the defendant being a resident of the county at the time. Just prior to said trial, Harriman claims he sent to his sister-in-law in Massachusetts $11,000 worth of bonds and assigned all his interest in the Fellows estate to his son, Alfred Harriman. Thus did he attempt to divest himself of all his property within a period of time between the bringing of said action in Stanislaus County and the trial of the same—to render himself entirely insolvent. On July 26, 1919, he was before said superior court in proceedings supplementary to execution and the complaint in this action was filed on the succeeding day. As to the delivery of the bonds to his son, John T. Harriman, it appears that, while a resident of Stanislaus County, the father went to Sonora and placed the bonds in a safe deposit box in a bank in that city to which box he had a key. He thereafter took the bonds to another bank in Sonora and put them in a safe deposit box which he took in the name of his sister in law, Martha Dewey, who lived in the east at that time and never had a key to the box. Thereafter he took the bonds from that box and placed them in the Jamestown National Bank in a safe deposit box in the name of said sister in law and retained the key to the box. After the commencement of this action he transfered the box to his said son, but left the bonds therein.

Quite naturally, the defendant, Frank G. Harriman, denied that he had any intention of defrauding the plaintiff and he even went so far as to claim that he was able and willing to pay the plaintiff what he owed him. But his actions speak louder than his words and his declared willingness to pay could avail nothing in the face of the determined efforts that were required to collect the judgment.

Again, the court was justified in concluding that the attempted transfer of the bonds in question was voluntary, although he testified it was to secure his care and support—an explanation, it may be said, similar to that given for the other transfers. In this connection it is well to note that, at said supplementary hearing he virtually admitted that it was a gift. At any rate, the trial court was in a better position than this court to properly appraise his veracity.

[7] As to this the rule is that the existence of an indebtedness at the time of a voluntary conveyance creates at least a *prima facie* presumption of fraud. (12 R. C. L. 476.)

Furthermore, "as against existing creditors no one can transfer all of his property in consideration of future support so as to defeat any such creditor in enforcing his claim, for under such circumstances the law presumes the act to be done with fraudulent intent to hinder and delay the creditor in the collection of his debt. This is by reason of the fact that every person is presumed to know what the direct result of his acts will be." (*Baxter* v. *Baxter*, 19 Cal. App. 238 [125 Pac. 359].) And, assuredly, it would make no difference whether the property is all disposed of in one transaction or in several as in the case at bar.

The other theory, to which we have adverted, that the transfers were all voluntary and that thereby he rendered himself insolvent and hence subject to the provisions of said section 3442 of the Civil Code finds support also in a rational inference from the evidence.

We deem it unnecessary to comment specifically upon the so-called "badges of fraud," recognized by the authorities and enumerated in volume 12, R. C. L., pages 478, 485, 496, 545, and 546, which respondent claims are all present herein, as we think sufficient has been said to vindicate the view of the trial court as to the fraudulent character of the transaction.

One other contention of appellants worthy of some consideration is that the evidence is insufficient to show that plaintiff was a creditor at the time of said transfer, the argument being that the judgment introduced in evidence would be proof only that he was a creditor at that date and not before. Certain authorities from other states are cited to support this view by appellants and others against it by respondent. But as to this, the record shows that the entire judgment-roll was received in evidence and it is not disputed that the complaint alleged that the breach occurred and the obligation accrued in November, 1916. At any rate, the complaint was filed prior to said transfer and unless the relation of debtor and creditor existed at the time the complaint was filed it is difficult to understand how legally there could be a money judgment rendered in favor of the plaintiff. As to the decisions applicable to the situation, counsel have apparently overlooked the case of *Chalmers* v. *Sheehy,* 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709], wherein we find this: "Mr. Freeman says 'that one having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, is, upon recovering judgment, entitled to avoid a fraudulent transfer antedating the commencement of this action.' (Freeman on Execution, 4th ed., sec. 137a. See Bump on Fraudulent Conveyances, secs. 502, 503; Waite on Fraudulent Conveyances, 3d ed., sec. 90; 8 Am. & Eng. Ency. of Law, p. 750. See, also, sections 3429 and 3430 of the Civil Code, as to who are creditors and debtors, and *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416], where it is said that the term 'debt,' used in our statutes, 'should be given its modern legal significance, as including any sort of obligation to pay money.' The cases are very numerous where it is held that a cause of action based upon a tort is within the statute against fraudulent conveyances, and that a person having such a cause of action is a creditor of the wrongdoer before judgment is obtained. The following are cases where it was so held, and where the liability was for slanderous words: *Walradt* v. *Brown,* 1 Gilm. (Ill.) 397 [41 Am. Dec. 190]; *Lillard* v. *McGee,* 4 Bibb (Ky.), 165; *Langford* v. *Fly,* 7 Humph. (Tenn.) 585; *Shean* v. *Shay,* 42 Ind. 375 [13 Am. Rep. 366]; *Jackson* v. *Myers,* 18 Johns. (N. Y.) 425; *Boid* v. *Dean,* 48 N. J. Eq.

193 [21 Atl. 618]; *Cooke* v. *Cooke,* 43 Md. 522; *Miller* v. *Dayton,* 47 Iowa, 312.)''

There is also a finding, as we have seen, that there was no actual delivery and continued change of possession of said stocks and bonds, thus bringing the case within the provisions of section 3440 of the Civil Code. We cannot say that the court was not justified in this conclusion, but it is unnecessary to consider this feature more specifically.

The judgment seems to be just and legally sound and it is therefore affirmed.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 30, 1922, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing of this cause in the supreme court is denied.

[8] The opinion seems to be in doubt on the proposition that in a complaint by a creditor to set aside a transfer made with intent to defraud creditors, the allegation that plaintiff has recovered a judgment on his debt, that it is unpaid, and that an execution has been issued thereon and has been returned unsatisfied, is sufficient to show that plaintiff is entitled to appeal to equity. We do not share in the doubt. The proposition has been settled by many decisions (*Thornburg* v. *Hand,* 7 Cal. 561; *Bickerstaff* v. *Doub,* 19 Cal. 112 [79 Am. Dec. 204]; *McMinn* v. *Whelan,* 27 Cal. 315; *Ohm* v. *Superior Court,* 85 Cal. 545 [20 Am. St. Rep. 245, 26 Pac. 244]; *Blanc* v. *Paymaster, M. Co.,* 95 Cal. 533 [29 Am. St. Rep. 149, 30 Pac. 765]; *Brown* v. *Campbell,* 100 Cal. 644 [38 Am. St. Rep. 314, 35 Pac. 433]; *Sewell* v. *Price,* 164 Cal. 270 [128 Pac. 407]; *Sewell* v. *Johnson,* 165 Cal. 767 [Ann. Cas. 1915B, 645, 134 Pac. 704]).

[9] The suggestion that the action in which the plaintiff recovered judgment against Frank G. Harriman was an action in tort for damages may be misleading. It was an action to recover of the defendant Frank G. Harriman a debt owing by him to plaintiff on agreement whereby plaintiff was employed by Harriman to render certain services to

Harriman as an attorney at law and it was an action in contract, not in tort. The judgment therein was proof that the defendant was indebted to plaintiff on the contract at the time the action was begun. The fact that the debt was for the reasonable value of the services and to that extent unliquidated was immaterial on the question of the right of the plaintiff to maintain this action to set aside the fraudulent conveyance.

Shaw, C. J., Shurtleff, J., Sloane, J., Lawlor, J., Wilbur, J., and Waste, J., concurred.