[Civ. No. 3545. Third Appellate District.—June 26, 1928.]

EDNA L. ALLEE, Respondent, v. W. A. SHAY, as Sheriff, etc., Appellant.

Zach Lamar Cobb and Earl A. Littlejohns for Appellant.

Pollock & Mitchell for Respondent.

PLUMMER, J.—This cause is before us on an appeal taken by the defendant from a judgment entered in favor of the plaintiff perpetually enjoining and restraining the defendant as Sheriff of the County of San Bernardino from selling certain real property situate in said county under and by virtue of an execution issued out of the superior court in and for the county of Los Angeles in an action wherein Lee E. West, a minor, by his guardian *ad litem*, Lillian Moran, was plaintiff and J. H. Kienzle was defendant.

The record shows the following facts: On January 4, 1925, Lee E. West, a minor, was seriously injured by being struck by an automobile driven by J. H. Kienzle, the accident occurring in the county of Los Angeles. On or about October 1, 1925, said minor, through his guardian, obtained a judgment against said Kienzle for the sum of $5,777.80. This judgment is unsatisfied, save and except that $376.17 has been collected thereon, leaving a balance due at the time of the trial of this action of the sum of $5,401.63.

At the time of the injury suffered by Lee E. West through the operation of the automobile driven by Kienzle, the latter was the owner of certain real property in controversy in this action of the value of between $6,000 and $7,000. This property was free of any encumbrances. The plaintiff in this action, Edna L. Allee, claims the property in controversy by virtue of a deed of gift from said Kienzle executed and delivered to her on or about January 14, 1925. For ap-

proximately eight years prior to the conveyance, Kienzle and Mrs. Allee (who was a niece of. Kienzle) and her husband, lived together upon the property, Kienzle furnishing a home which was an eight-room house, and Mrs. Allee doing the housework. After the accident on January 4, Kienzle returned to the home occupied by himself and the Allees at about 10 o'clock in the evening. Upon returning home, Kienzle informed the Allees that he had been involved in an accident, and that a boy had been apparently quite seriously injured. Kienzle asked Mrs. Allee if the premium on his $10,000 liability insurance had been paid. Mrs. Allee looked up the policy and informed Kienzle that it had not been paid. The next day, January 5th, Mrs. Allee paid the premium on the insurance and reported the accident. On the 6th of January, Kienzle went to Imperial Valley and did not return for several days. During the absence of Kienzle, J. W. Moran, the stepfather of Lee E. West, went to the Kienzle residence and inquired for him of the Allees, and had a talk with Mr. Allee about the boy's injury. Kienzle returned home about January 10th, and Mr. Allee informed him that Mr. Moran had been there to see him about the accident, and that Mr. Moran considered it was Kienzle's fault, and that the boy was in a hospital in a serious condition, and that they were making a claim against Kienzle, and that Kienzle had run away because he knew that he was at fault. Moran also left his address, requesting that Kienzle communicate with him. The payment of the premium by Mrs. Allee upon the insurance policy referred to, not having been made within the time allowed by the terms of the policy, the company refused to renew the policy, and conveyed this information to Kienzle prior to the execution of the deed referred to. On January 14, 1925, Kienzle conveyed the property in controversy by deed of gift to the plaintiff in this action, the deed, so far as pertinent here, being in the following words and figures, to wit:

"Know All Men by These Presents: That John H. Kienzle, a widower, of Upland, California, in consideration of $10.00 and love and affection, the receipt whereof is hereby acknowledged, grants to Edna L. Allee, a married woman, by this deed of gift, of Upland, California, all that real property situate in the City of Upland, County of San Ber-

nardino, State of California, bounded and described as follows:'' (Here follows description of the property.) That at the same time, Kienzle transferred to his niece a 1922 Studebaker sedan worth about $600. No consideration was paid for this transfer.

During the month of October, 1925, Kienzle converted a $2,000 mortgage into cash, withdrew $600 from the Building & Loan Association and $1,900 from a savings account, aggregating the sum of $4,500, and gave the same to a nephew named William Kahrig. At the time of this gift, Kienzle was not indebted to Kahrig in any sum whatever. Upon receiving the money Kahrig immediately sent it to Kienzle's brother in the state of Kansas. After making these gifts, Kienzle had property left of the value of $700—if we adopt the highest figures. Kienzle testified that he could not pay the judgment obtained by West; that he did not intend to pay it, and also that he would not. Kienzle further testified that he made the deed to his niece to save the expense of probating his estate, although at the time he knew that if he died leaving personal property it would be necessary to have the same probated. Kienzle also testified that his reason for making the gift was that his niece had always been kind to him and he thought that she should have it. Both the plaintiff, Edna L. Allee and Kienzle testified that at the time of the execution and delivery of the deed, Kienzle was not indebted to his niece, Edna L. Allee, in any sum whatever. It was stipulated during the trial that the plaintiff in the case of West against Kienzle had used every reasonable effort to collect the judgment, without avail, and that Kienzle did not have any property in the state of California subject to execution, unless it be the real estate involved in this action. On November 16, 1925, the execution hereinbefore referred to was levied upon the property conveyed by Kienzle to his niece, whereupon his niece, the plaintiff, brought this action for an injunction, and had judgment as prayed for.

The complaint alleges that the said Edna L. Allee is the owner of lot 8 in block 6 of ''Magnolia,'' as per plat recorded in book 9 of maps, page 15, records of the county of San Bernardino. That the defendant, as the Sheriff of San Bernardino, has levied upon said property by virtue of an execution issued in the case of Lee E. West, a minor, against

J. H. Kienzle, and will, unless restrained by the court, proceed to sell the same. The answer denies the ownership of the plaintiff; sets forth that the conveyance referred to was made voluntarily and to hinder, delay and defraud creditors; that no consideration was paid therefor; and also sets forth the facts showing the judgment obtained by Lee E. West against J. H. Kienzle, and its remaining unsatisfied; and also that J. H. Kienzle was in fact the owner of the property described in plaintiff's complaint. The court made the following findings:

"1. That all of the allegations contained in plaintiff's complaint are true;

"2. That it is not true that J. H. Kienzle is the owner in fee of the property described in plaintiff's complaint;

"3. That it is not true that J. H. Kienzle conveyed or attempted to convey said property to Edna L. Allee without any consideration;

"4. That it is not true that plaintiff will not suffer any damages by reason of said sale attempted to be made by said defendant;

"5. That it is not true that the said J. H. Kienzle made a conveyance of said property described in plaintiff's complaint to said Edna L. Allee with the intention or for the purpose of defrauding Lee E. West or defeating the execution of any judgment;

"6. That it is not true that said Edna L. Allee conspired with said J. H. Kienzle to accept said conveyance for the purpose of defrauding said J. H. Kienzle's creditors;

"7. That it is not true that the conveyance of said property made by said J. H. Kienzle to said Edna L. Allee was or is fraudulent or void, and it is not true that said Edna L. Allee has no right or title or interest in or to said property."

The appellant challenges these findings as unsupported by the evidence.

Before setting forth any testimony relevant to the issue presented, it will clarify the situation to state that the record shows that after the transfer by Kienzle to his niece of the real estate and automobile, he still had in his possession property of the value of $5,200—taking his own statement. This sum is $577.80 less than the judgment obtained

against him by Lee E. West on account of injuries suffered at his hands on January 4, 1925.

Edna L. Allee, the plaintiff in this action, testified that she and her husband lived with Kienzle, and had lived with him in the residence on lot 8 in block 6 of "Magnolia" in Upland about eight years; that Kienzle executed and delivered a deed to her, to said property, as a deed of gift; that she did not pay anything for the conveyance; that the $10 mentioned therein was not paid; that the first knowledge she had of the deed was when it was given to her; that she did not see the deed until after it had been recorded; that it was given to her on account of love and affection; that she knew that Mr. Kienzle had been involved in an automobile accident on January 4, 1925, prior to the execution of the deed; that she learned of the accident by talking it over with Mr. Kienzle on the evening that it occurred; that her husband was present at the time; that she did not know who the boy was that had been injured; that Kienzle told her he had had an accident, that a couple of boys on a motorcycle had run into him; that before this time Kienzle told her he was going to give her the property; that Kienzle had given her the automobile at the time he bought it; that the registration certificate conveying the automobile to her was made at the time of the execution of the deed. This is shown by the following questions and answers: "Q. You think it was in January. Was it before or after the transfer of the property that has been referred to? A. It was about the same time. Q. Now, at that time, did you pay him any money for the automobile? A. I did not. Q. And he was not indebted to you in any way, was he? A. No." The witness then testified as to the mortgage, the money in the savings bank and building and loan association to which we have referred, and to her knowledge that it was given by Kienzle to his nephew, Kahrig. The plaintiff, in direct relation to the conveyance, testified as follows: "Q. Now, will you tell the court just what was said so the court may know what the situation was? A. Well, he has evidently appreciated what I have done for him. Q. What did he say? A. And he told me that he has. He said that many times; he said that he did not know what he would do if it was not for me; and how happy that I had made him, and how I had helped him in a lot of little troubles—loneliness for his

wife—and that he did not think he could ever repay me for what I had done for him. He said that—oh, I don't remember how many times. Q. Now, with reference to this lot, what did he say he was going to do with that? A. He did not say exactly, that is, to come right out and say, 'this house will be yours,' although he left that impression. Q. What did he say to you when he delivered you the deed? Did you know from anything that was said what that deed was or what place it was—whether this house or some other house? A. Well, I will say that I was surprised, and still I felt that I really should have it; and I thanked him, and he, of course, was glad for me to get it; and I think that I told him, as well as I remember, that he never need worry, that he would always have a home there with me, because he had given it to me, and that I never would turn him out, and that we would live just like we had always lived, and be as happy, and continue as we had." J. H. Kienzle, the grantor named in the conveyance in question, testified that his niece, Mrs. Allee, and her husband, had been living with him seven or eight years in the house situate on lot 8 in block 6, and upon direct examination further testified: "Q. At that time, the date the deed was made, did you know of any liability against you in favor of anybody? A. No, sir. Q. Were you indebted to Lee E. West at that time? A. No, sir. Q. On January 4 you had an accident, an automobile accident, with Lee E. West, had you not? A. Yes. Q. When you made the deed, was it with any intent or purpose on your part to avoid any payment of any sum of money to him, or to anybody else? A. No, sir, none whatever. Q. You knew the facts of the accident? You knew how it happened? A. Yes, sir. Q. Had there been any claim for damages made against you by Mr. West or anybody else on his behalf, on the 14th day of January, 1925, the day that you transferred this property to your niece? A. No, sir, none whatever." That J. H. Kienzle did know that a claim was being made against him, and that he would be held liable for the injury to the boy is made manifest by the following excerpt taken from his testimony given upon cross-examination: "Q. Isn't it a fact that after you got back Mr. Allee told you that Mr. Moran, Mr. West's father, had been to see him regarding the accident? A. Yes, sir. Q. And you knew that Moran had been out

there making a claim, did you not? A. I didn't know what he was there for; I had no conversation with him; and Mr. Allee told me that Mr. Moran had been there—that he would— Q. He had been there regarding the accident? A. Yes, sir. Q. And that was immediately after you got back from this hunting trip? A. No; that was while I was gone. Q. But you found that out— A. I found it out after I got back. Q. And that was within one week after the accident? A. Yes, sir. Q. And before you made the deed? A. Before I made the deed. Q. Yes. A. Yes. Q. Now, didn't Mr. Allee tell you what Mr. Moran said? A. Yes. He made several mistakes, I think. He said that I was driving a Buick car, a red Buick; and Mr. Allee corrected him and said, 'there is the car right here; this is the car.' And the man that he had with him, he says, 'John you have got this balled up.' Whoever John was, I don't know. And he said I had run over the boy. Q. Then you knew that he felt as though that had been quite a serious injury? A. Well, he told Mr. Allee that I ran over his boy and that I was to blame and that I ran away because I knew I was at fault. Q. And what else did Mr. Allee tell you that Mr. Moran had said? A. Well, nothing much more than that. Q. Did he tell you that this boy was in the hospital? A. Yes, sir. Q. Did he tell you that his leg had been broken? A. Yes, he told Mr. Allee that his leg was broken. Q. What else did he tell you? A. Well, that is about all. Q. Well, now, didn't you believe from that that he would possibly make a claim for damages against you? A. I never thought of such a thing, because I did not consider myself to blame at all. Q. Well, you knew, nevertheless, that the people considered that you were at fault, from what Mr. Allee had told you that Mr. Moran had said? A. Well, you could take it for that, yes. Q. And you knew that those people considered that it was your fault? A. They claim it was. Q. And all of that occurred before you made this deed, did it not? A. Yes, sir.''

In relation to the transfer of the automobile, Kienzle testified as follows: ''Q. You think it was in January. Was it before or after the transfer of this property that has been referred to? A. It was about the same time. Q. About the same time? A. Yes, sir. Q. Now, after making this gift of this house and lot and the $4,500 worth of prop-

erty, what did you have left? A. My little business was all. Q. Your little business in Upland? A. Little business in Upland. Q. What is the value of that business? A. Total, perhaps $600. Q. And that includes your tools, does it? A. Yes, and a small amount of material.'' In another place this witness testified that the value of this property was $700, and in our calculations, hereinbefore set forth, we have accepted the highest figures. Kienzle also testified that Mrs. Allee paid him no consideration for the conveyance, not even the $10, and that he was not indebted to her in any sum. That Mrs. Allee had been kind to him, etc. With reference to the payment of the West judgment the testimony of Kienzle is as follows: ''Q. Now, isn't it a fact, Mr. Kienzle, that you stated you did not intend to pay this judgment in the case of West against Kienzle? A. I have not anything to pay it with, no. Q. And isn't it a fact that you said that you did not intend to pay it? A. I said I would not. Q. Isn't it a fact that you said that it would not be paid in your lifetime? A. I said that I could not pay it; I couldn't pay it in my lifetime. Q. That you could or couldn't pay it? A. That I couldn't. Q. Now, you stated that you transferred this property to Mrs. Allee to save probate expenses and attorney's fees? A. Yes, sir. Q. And you knew that there would be probate expenses and attorney's fees on the mortgage, did you not? A. Yes. Q. And also on the money in bank and the loan association? A. Yes, sir.''

The transcript discloses a somewhat lengthy examination of the witnesses Allee and Kienzle, but there is nothing contained therein which changes the force and effect of what we have set forth herein. Does this testimony support the findings of the trial court, or does it not irresistibly lead to findings directly opposite thereto? The answer is found in the application of the last clause of section 3442 of the Civil Code, which reads: ''Provided, however, that any transfer or incumbrance of property made or given voluntarily or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors.''

On January 4, 1925, at the instant the automobile driven by Kienzle injured the minor, Lee E. West, a cause of action arose in favor of West against Kienzle, and a

claim for damages then and there instantly arose, of which claim J. H. Kienzle then and there had immediate notice. We make this statement upon the authority of *Cioli* v. *Kenourgios,* 59 Cal. App. 690 [211 Pac. 838], and the case of *Chalmers* v. *Sheehy,* 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709]. In the latter case the opinion quotes from Freeman on Executions, as follows: "That one having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, upon recovering the judgment, entitled to void a fraudulent transfer antedating the commencement of his action." (Freeman on Executions, 4th ed., sec. 137a.) A number of other cases are then cited in *Chalmers* v. *Sheehy, supra,* to the effect that a person having a cause of action on account of tort is a creditor of the wrongdoer before judgment is obtained, and is entitled to set aside any conveyance made with the intent and purpose of defeating recovery upon any judgment based upon the tort. To the same effect is the language of this court in *Benson* v. *Harriman,* 55 Cal. App. 483 [204 Pac. 255]. ■ That the minor, Lee F. West, has pursued, and was at the time of the beginning of this action pursuing, the proper remedy to secure satisfaction of his judgment against Kienzle is clearly established by the following authorities: *Ohio Electric Car Co.* v. *Duffet,* 48 Cal. App. 674 [192 Pac. 298], where it was held that the title to property conveyed with intent to defraud creditors remains in the fraudulent grantor, which the creditor may seize, etc. See, also, 12 California Jurisprudence, page 1029, where the three remedies open to a creditor are pointed out, one of which is by way of sale, under execution, of real property fraudulently conveyed.

■ None of the findings of the trial court is to the effect that the conveyance from Kienzle to Allee was made for a valuable consideration. Finding number three simply is that it is not true that J. H. Kienzle conveyed, or attempted to convey, said property to Edna L. Allee without any consideration. This is not a finding that it was made for a valuable consideration. ■ There is a distinction between a good and a valuable consideration, and where, as in this case, the conveyance purports to be made for love and affection, it is universally held that, while such a conveyance may be good as between the parties, it does not constitute in law

a valuable consideration so as to take it out of the statute of frauds.

The following facts stand out undisputed in the testimony: That on the fourth day of January, 1925, Kienzle was the owner in fee of the real property involved in this action; that he was the owner of an automobile of the value of about $600; that he had other personal property of the value of $5,200; that on the fourth day of January, 1925, the automobile, while being driven by Kienzle, struck and injured Lee E. West, a minor; that shortly thereafter, and prior to any conveyance of his property, Kienzle learned that West had been seriously injured; that upon returning home on the evening of January 4th, Kienzle immediately informed his niece of the accident and asked her if the premium on his liability policy had been paid; that an attempt was made the next day to pay the premium on the policy, but that the policy had already lapsed; that prior to the conveyance, Kienzle knew not only that West had been injured, but that he, Kienzle, was held responsible therefor; that the conveyance of the real estate and automobile to his niece, the plaintiff in this action, was purely voluntary, without any valuable consideration whatever; that after making the gifts referred to, and conveying the real estate and automobile to the plaintiff herein, Kienzle did not have sufficient property remaining to meet the claim held against him by the minor, Lee E. West, on account of the tort set forth herein; that a few months after making the gifts referred to herein, and shortly following the entry of judgment in favor of the minor, Lee E. West, Kienzle gave away money to the extent of $4,500, and this money was immediately sent beyond the jurisdiction of California courts; that after making the gift of the real estate and automobile to the plaintiff herein, Kienzle was at all times insolvent and unable to meet the amount of the claim found against him by the judgment entered in favor of the minor, Lee E. West; that Kienzles' own statement is and was to the effect that he could not pay West's judgment, and also that he would not pay the same. The testimony heretofore set forth also shows that Kienzle's grantee, the plaintiff in this action, was aware of all the circumstances disclosed by the record and summarized herein.

That these acts are all *indicia* of fraud is fully established. (*Benson* v. *Harriman*, 55 Cal. App. 483 [204 Pac. 255]; *Cioli* v. *Kenourgios*, 59 Cal. App. 690 [211 Pac. 838]; Mump on Fraudulent Conveyances, p. 33, sec. 47; also, p. 36, sec. 50; 27 C. J. 488; *Daugherty* v. *Daugherty*, 104 Cal. 221 [37 Pac. 889]; *Bull* v. *Bray*, 89 Cal. 286 [13 L. R. A. 576, 26 Pac. 873].) If the question of intent were decisive of this case, we think it is evident that the findings of the trial court could not be sustained. This is indicated by the reasoning of the court in the case of *Bull* v. *Bray*, *supra,* and the language of the court in the case of *Benson* v. *Harriman, supra,* and *Tobias* v. *Adams,* 201 Cal. 689 [258 Pac. 588]. In the case of *Benson* v. *Harriman* the defendant had testified that he had no fraudulent intent. This court thus spoke of such testimony: "Quite naturally the defendant denied that he had any intention of defrauding the plaintiff, and he even went so far as to claim that he was able and willing to pay the plaintiff what he owed him. But his actions speak louder than his words and his declared willingness to pay could avail nothing in the face of the determined efforts that were required to collect the judgment." In the case at bar Kienzle declared his unwillingness and his inability to pay, the inability being created by his own acts. In the case of *Tobias* v. *Adams, supra,* the supreme court thus speaks of the testimony of one stating that he entertained no fraudulent intent after conveying all his property in such a manner as if valid, to place it beyond the reach of creditors: "We are much inclined to agree with appellant. For if a man keeps his bank account in the name of another, admittedly to prevent his creditors from reaching it by legal process, and then takes his entire estate and either puts it in his wife's name or deposits it in the name of his secretary, knowing that the judgments are in existence, his mere *ipse dixit* that it is not to defraud his creditors would hardly create a *bona fide* conflict in the testimony. While a finding will not be disturbed on appeal, if there is a substantial conflict in the evidence from which it springs, the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for difference of opinion." (Citing authorities.) In the case of *Knox* v. *Blanckenburg,* 28 Cal. App. 298 [152 Pac. 59], this court expressed its views as to the weight of such testimony in the

following words: "According to the defendant's own testimony, he transferred all his property, both real and personal, to his wife without receiving any consideration therefor, and when in debt to his brother and others, thus making himself impotent, however willing, to pay any of his debts, removed all his property from the reach of his creditors, and put it beyond their power, if the transfer is to stand, to enforce payment. The inevitable result of this act on the part of the defendant was to hinder and delay his creditors in the enforcement of their just claims. His own bare statement, unsupported by any facts, that in giving the property to his wife he did not intend to hinder or delay his brother in collecting his debt, cannot overcome the presumption that he intended the inevitable consequences of his wilful and intentional acts." When Kienzle made the voluntary conveyance of his real estate and automobile to Edna L. Allee, coincident with the conveyance, he rendered himself unable to respond to the claims of Lee E. West, who became a creditor of Kienzle immediately upon the commission by Kienzle of the tort referred to herein on the fourth day of January, 1925.

Thus far we have considered this cause in the light of the provisions of section 3442 of the Civil Code other than as contained in the concluding proviso relating to the transfer of property made without a valuable consideration while one is insolvent or in contemplation of insolvency. ■ Since this proviso was added to the section by the legislature in 1895, the intent of the grantor is wholly immaterial if his voluntary conveyance places him in a position where he is unable to respond to the claims of his creditors. In the case of *Hemenway* v. *Thaxter*, 150 Cal. 737 [90 Pac. 116], the supreme court thus speaks of the proviso: "That the conveyance, if voluntary, was in fraud, scarcely admits of argument. Section 3442 of the Civil Code provides that any transfer made or given voluntarily or without valuable consideration by a party while insolvent or in contemplation of insolvency shall be fraudulent and void as to existing creditors. Hemenway admits that by this conveyance he divested himself of all property liable to execution; that he became thereby, and has ever since remained, insolvent. The consequence of this conveyance being, then, to render Hemenway insolvent, he will be presumed to have intended its

natural consequences, from which follows an intent to become insolvent, or contemplated insolvency, in the language of the act.''

In 12 California Jurisprudence 1019, section 60, after referring to section 3442 of the Civil Code as it read prior to 1895, the rule applicable to this case is thus stated: ''The amendment of 1895 completely changed this rule (as to intent). By express provision a voluntary conveyance made by an insolvent or by one in contemplation of insolvency, is now conclusively presumed to be fraudulent as to existing creditors. The insolvency of the voluntary grantor is conclusive of fraudulent intent, and no other facts can control, influence or overcome this presumption. The question of actual intent is immaterial.''

In the case of *Hanscome, etc.*, v. *Ainger*, 71 Cal. App. 735 [236 Pac. 325], this court, speaking through Mr. Justice Hart, in considering section 3439 and the proviso in section 3442 of the Civil Code, speaks, first, of the intent necessary when the grantor is not insolvent, and then, when the grantor is insolvent, thus disposes of the question of intent: ''On the other hand, if as said paragraph of the complaint also avers, the conveyance was made by D. N. Ainger voluntarily or without a valuable consideration, while said Ainger was insolvent or in contemplation of insolvency, his 'intent is immaterial and the transfer, regardless of the actual intent, is void as to his creditors.' '' (Citing *Atkinson* v. *Western Development Co.*, 170 Cal. 503 [150 Pac. 360], and the case of *Benson* v. *Harriman*, 55 Cal. App. 483 [204 Pac. 255],— also decided by this court.)

In *Lefrooth* v. *Prentice*, 202 Cal. 215 [259 Pac. 947], the supreme court of this state having before it the proviso added to section 3442 of the Civil Code, where a voluntary conveyance had been made, states the law in these words: ''Under such a showing the fraudulent intent on the part of the grantee of such transfer is immaterial'' (citing a number of authorities), and concludes with these words: ''If these conditions, to-wit, a grant made without consideration by a person insolvent or in contemplation of insolvency, are present, the intent of the grantor is immaterial and the transfer, regardless of the actual intent, is void as to creditors.'' To the same effect is the case of *Southwick* v. *Moore*,

61 Cal. App. 585 [215 Pac. 704], where the insolvency was created by the act of making the voluntary conveyance.

The fact that Kienzle retained some property for a short while after having made the gifts to his niece does not relieve the transfer from the charge of being fraudulent. In 27 California Jurisprudence, page 550, section 250, we find a pertinent statement of the law supported by numerous authorities. It is there stated: "The presumption of fraud, as against existing creditors, raised by a voluntary conveyance by the debtor of his property, becomes conclusive where there is no evidence that he retained sufficient property to satisfy his creditors, and the fact that there was no actual fraudulent intent on the part of either party to the transfer does not in any way affect the operation of the rule. In order that a voluntary conveyance may be upheld as against existing creditors, it is essential that the property retained by the debtor should be clearly and amply sufficient to satisfy all his existing debts. The test for determining the validity of a voluntary conveyance . . . is whether sufficient property remains to pay the grantor's debts, and to satisfy this test, the property must be actually sufficient and not apparently so." The text further shows that whether sufficient property has been retained must be determined by results. The result in the case at bar conclusively establishes the insufficiency of the remaining estate of Kienzle to satisfy the West judgment after the voluntary conveyances made to his niece, even though we do not consider the subsequent acts of Kienzle in sending all of his available cash, through the intermediary of his nephew, to his brother in the state of Kansas.

The respondent cites the cases of *Bank of Willows* v. *Small,* 144 Cal. 709 [78 Pac. 263], and *Marple* v. *Jackson,* 184 Cal. 411 [193 Pac. 940], and the part of section 3442 of the Civil Code, exclusive of the proviso, in support of the judgment herein. These cases are not authority here by reason of dissimilarity of facts. In the Bank of Willows case it was held that before the plaintiff could complain of the deed in question, it was necessary to show that its claim could not be collected. In the instant case, it is admitted that Kienzle has nothing out of which the West judgment may be realized, and the facts show that after the conveyances referred to he had insufficient assets to meet the judg-

ment. In the case of *Marple* v. *Jackson,* the deed involved was executed and delivered some ten years preceding the creation of the indebtedness. In the case at bar the indebtedness existed, even though the amount was unascertained, prior to the time of the execution of any of the conveyances. What we have before said disposes of the respondent's reliance upon the intent portion of section 3442 of the Civil Code.

In view of the authorities cited and the facts set forth herein, it must be found and held that J. H. Kienzle, in making the voluntary conveyances to his niece, Edna L. Allee, the plaintiff in this action, rendered himself unable to respond to the claims of Lee E. West, a minor; that such conveyances were made in contemplation of insolvency, and that the said J. H. Kienzle intended to place all his property beyond the reach of execution; that the conveyance of the real property referred to in this action is void as against the claims of Lee E. West; that the trial court's finding to the contrary is not supported by the evidence, but is contrary thereto; that the conclusions of law drawn by the court upon its findings are erroneous; that the evidence in this case is without conflict upon all the material points involved in this action, and cannot truthfully be changed; and that proper findings may be drawn therefrom and a correct judgment entered and this cause terminated without further litigation, by this court exercising the authority conferred by the recent constitutional amendment empowering an appellate court so to do, and also in accordance with the provisions of section 966a of the Code of Civil Procedure (Stats. 1927, p. 583), where trial by jury is not a matter of right, or where trial by jury has been waived.

It is hereby ordered that the findings, conclusions of law and judgment of the trial court be, and the same are hereby, set aside, and the following findings, conclusions of law and judgment substituted therefor:

### Findings of Fact.

1. That all the allegations contained in the defendant's answer are true and correct;

2. That as against the judgment in favor of Lee E. West, a minor, against J. H. Kienzle, the said J. H. Kienzle is the owner in fee of all the property described in plaintiff's complaint;

3. That on or about the fourteenth day of January, 1925, the said J. H. Kienzle, by deed of gift, without any valuable consideration whatever, conveyed to his niece, Edna L. Allee, the plaintiff in this action, the real estate described in plaintiff's complaint, and at about the same time, without any consideration, conveyed to her a certain ''Studebaker'' automobile;

4. That after said conveyance, the said Kienzle was not possessed of sufficient property to meet the indebtedness owing by him to the said Lee E. West, a minor;

5. That the indebtedness to Lee E. West, a minor, accrued and became fixed against the estate and property of J. H. Kienzle immediately upon the injury inflicted upon the person of Lee E. West, by the automobile owned and driven by J. H. Kienzle on the fourteenth day of January, 1925;

6. That in pursuance of an intent to prevent a recovery by Lee E. West of any damages by reason of the tort committed by the said J. H. Kienzle, the said J. H. Kienzle divested himself of the real estate referred to in plaintiff's complaint, the automobile mentioned in the testimony, and the $4,500 in cash, which latter sum has been sent to the state of Kansas and beyond the jurisdiction of California courts.

### Conclusions of Law.

From the foregoing findings of fact, the following conclusions of law are drawn:

That the conveyance by J. H. Kienzle to Edna L. Allee, of the real estate mentioned in plaintiff's complaint, on the fourteenth day of January, 1925, was and is fraudulent and void, and creates no title in the said Edna L. Allee, as against the unsatisfied judgment now held by Lee E. West, a minor, against the said J. H. Kienzle;

That Lee E. West is entitled to have the property mentioned sold under execution issued in said action, and the plaintiff is not entitled to an injunction restraining the Sheriff of the County of San Bernardino from making sale of said property under said execution, or any execution that may be issued upon said judgment.

### Judgment.

And it is further ordered that following the words ''found between the parties'' the judgment be, and is hereby, corrected to read as follows:

It is hereby adjudged that the plaintiff has no title to the premises involved herein as against the claim of Lee E. West, a minor, based upon his judgment against J. H. Kienzle;

That the conveyance made by J. H. Kienzle to lot 8 in block 6, of Magnolia, as per plat recorded in book 9 of maps, page 15, records of the county of San Bernardino, state of California, was and is fraudulent and void as against the claim of Lee E. West, a minor, and the plaintiff herein has no title or right to said property as against the claim of the said Lee E. West;

That the defendant, as the Sheriff of the County of San Bernardino, has a legal right, and may properly proceed to sell the property referred to under an execution issued upon the judgment in favor of the said Lee E. West, against the said J. H. Kienzle, referred to in this action.

And it is further adjudged that the plaintiff take nothing by reason of this action, and that the defendant have and recover his costs and disbursements incurred herein.

Hart, J., and Finch, P. J., concurred.