[S. F. No. 2186.   Department One. — April 13, 1901.]

# ELLA T. CHALMERS et al., Appellants, v. JAMES SHEEHY, Respondent.

APPEAL — TRANSCRIPT — OMISSION OF VERIFICATION TO ANSWER — CLERK'S CERTIFICATE — OBJECTION NOT TENABLE. — Where the answer printed in the transcript on appeal does not contain a verification, but the clerk's certificate states that the transcript is correct, except the affidavit of the defendant, verifying the answer, conceding such certificate to be insufficient to show that the answer was in fact verified, the absence of the verification cannot be objected to upon appeal for the first time.

ACTION TO QUIET TITLE — FRAUDULENT DEED TO PLAINTIFF — SUFFICIENCY OF ANSWER — WAIVER OF OBJECTION. — In an action to quiet title, where the title of the defendant depends upon assailing a fraudulent deed to one of the plaintiffs from her husband, against whom the defendant acquired a deed under execution, if there was no special demurrer to the answer, in the absence of which its allegations were sufficient, and the case was tried on the assumption that the issue of fraud was properly pleaded, an objection that the allegations of fraud in the answer were not sufficiently specific is waived, and cannot be urged upon appeal.

ID. — TITLE UNDER EXECUTION — SETTING ASIDE FRAUDULENT TRANSFER — STATUTE OF LIMITATIONS. — The statute of limitations does not begin to run against one who has acquired the right, by virtue of a sale under execution against a husband, to set aside a previous fraudulent transfer from the husband to the wife, until the date of the sheriff's deed under the execution.

ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — IMPEACHMENT. — Newly discovered evidence, which is merely cumulative, or designed to impeach or contradict the testimony of witnesses who testified at the trial, is not ground for a new trial.

ID. — ACCIDENT AND SURPRISE — ENFORCED CHANGES OF COUNSEL — ABSENCE OF INJURY — DISCRETION NOT ABUSED. — Accident and surprise, growing out of enforced changes of counsel during the progress of the case, is not ground for the reversal of an order denying a new trial, where it appears that the moving party was not blameless for the first change of counsel, that the facts shown to the court warrant the conclusion that no injury resulted from any of the changes made, and that there was no abuse of discretion in denying the motion as to that ground.

FRAUDULENT CONVEYANCE — EXISTING CREDITORS — CAUSE OF ACTION IN TORT. — One who has a cause of action in tort is a creditor of the tort-feasor before the commencement of the action, as well as after, and is entitled, as an existing creditor, upon recovering judg-

ment, to assail a conveyance which is fraudulent as to existing creditors.

ID. — FRAUDULENT GIFT FROM HUSBAND TO WIFE — PENDENCY OF ACTION FOR SLANDER — RIGHT TO ASSAIL TRANSFER. — Where a husband made a fraudulent gift of all of his land to his wife, pending an action for slander against him, and with the design to defeat any judgment which might be recovered against him in the action, the plaintiff therein is entitled, as an existing creditor, to assail the transfer, after obtaining judgment and title under execution sale against the husband.

ID. — INSOLVENCY OF FRAUDULENT HUSBAND — GIFT — INNOCENCE OF WIFE IMMATERIAL. — Where the husband made a fraudulent gift of land to his wife, and had no other property with which to meet his liabilities, and owned no other property at the date of the judgment against him, and execution sale of the land thereunder, the fact of the innocence of the wife from any participation in the fraud, or that she did not know the condition of her husband's affairs, is immaterial.

APPEAL from an order of the Superior Court of Santa Cruz County denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion.

J. J. Dunne, for Appellants.

Sullivan & Sullivan, for Respondent.

CHIPMAN, C. — Action to quiet title. Sheehy alone answered, and is the sole defendant. The court adjudged that plaintiff Mary D. Chalmers and defendant James Sheehy were owners, as tenants in common, of an equal undivided one-half interest in and to the premises in controversy, and that plaintiff Ella T. Chalmers had no interest therein. Plaintiffs appeal from the order denying their motion for a new trial on a statement of the case. It was admitted at the trial, and the court found, that plaintiff Mary D. Chalmers was the owner of all the interest claimed by her. We do not see, therefore, that the appeal concerns her. The real issue is as to the ownership of the remaining undivided one-half interest in the property.

Sheehy commenced an action against Chalmers on March 1, 1892, in the superior court of the city and county of San Francisco, for an alleged slander, laying his damage at fifty thousand dollars. The cause was tried in May, 1894, by a jury, and Sheehy had a verdict against Chalmers for two

thousand dollars, and judgment was accordingly entered on
May 18, 1894. A transcript of the judgment docket was filed
for record, May 21, 1894, in the office of the county recorder
of Santa Cruz County, where the land in question is situated;
execution duly issued on said judgment, and was received by
the sheriff of Santa Cruz County, who duly levied upon Chal-
mers's interest in the land on June 4, 1896, resulting in the
sale, by the sheriff, to Sheehy, on October 19, 1896, of all the
title and interest of Chalmers in and to the said premises for
the amount of the judgment, costs, and accrued interest.
There being no redemption, the sheriff duly executed his deed
of the premises to Sheehy on April 21, 1897. Sheehy claims
title under this deed. Plaintiff Ella claims title under deed
of gift from her husband, dated October 3, 1893, after Sheehy
had commenced his slander suit against Chalmers, but before
judgment in that action. The motion for a new trial was
made on the grounds: 1. Irregularity in the proceedings; 2.
Accident and surprise; 3. Newly discovered evidence; 4. In-
sufficiency of the evidence; 5. Errors in law occurring at the
trial.

1. Appellants make the point that the transcript does not
show that the answer was verified. No verification appears in
the printed copy of the answer. In the clerk's certificate,
however, it is stated that the transcript was correct, "with the
exception of the following,—to wit, . . . the affidavit of James
Sheehy, verifying the answer in said action." There was no
motion to strike out the answer, and the parties went to trial
on the pleadings without objection. Conceding the clerk's
certificate to be insufficient to show that the answer was in
fact verified, it is too late to urge the objection here for the
first time. It is also objected that the allegations of fraud in
the answer, impeaching the deed from Chalmers to his wife,
are not sufficiently specific. There was no demurrer to the
answer, in the absence of which the allegations were sufficient.
The case was tried on the assumption that the issue of fraud
was properly pleaded.

2. Appellants also make the point that Sheehy's right to
have the transfer to Mrs. Chalmers set aside is barred by the
three years' statute of limitations. (Code Civ. Proc., sec. 338,
subd. 4.) This contention rests upon the claim that the
statute began to run from the date of Chalmers's deed to his
wife, October 3, 1893.

The present cause of action did not accrue to Sheehy until he had obtained the judgment in the slander suit, and had caused the premises to be sold in execution thereof; and hence the statute, as to him, did not begin to run at the date of Mrs. Chalmers's deed, but at the date of the sheriff's deed to Sheehy. (*Hager* v. *Shindler*, 29 Cal. 47; *Stewart* v. *Thompson*, 32 Cal. 260; *Goodnow* v. *Parker*, 112 Cal. 437.)   The point was directly decided in *Stewart* v. *Thompson*.   The cases are reviewed in *Goodnow* v. *Parker*, and *Stewart* v. *Thompson* cited approvingly.

3. The grounds much relied on for reversal are, newly discovered evidence, and accident and surprise.   The alleged newly discovered evidence referred to in the affidavits is not set out.   It is alleged to consist of statements previously made by Sheehy and one Horgan in another action pending between Sheehy and Chalmers, contradictory of their testimony in this action, but of which affiants had no knowledge at the latter trial.   Judging from what is stated in the affidavits, it is impeaching evidence, for it is stated to be intended to contradict testimony given by Horgan and Sheehy in the present action. The rule is, that newly discovered evidence which is merely cumulative, or designed to contradict a witness, is not of a character to warrant a new trial.   (*People* v. *Anthony*, 56 Cal. 397.)

Upon the question of accident and surprise, the affidavits and counter-affidavits are very lengthy, and embrace the history not only of the trial of the present case, but much of that relating to the action for defamation of character out of which the defense in this action arose.

An examination of the numerous affidavits shows that appellants relied on the alleged fact that the cause was not fairly or fully or properly presented to the court, on account of the abandonment of the case, at a critical moment, by plaintiffs' attorney, Mr. Eugene Deuprey, who had defended Chalmers in the slander suit and had prepared the present cause for trial.   It is set forth in plaintiffs' affidavit that Mr. Deuprey was fully paid for his services, but, because of other important engagements, refused to attend to this present case, and that plaintiffs were compelled to employ counsel unfamiliar with the law and the facts, in consequence of which the cause was not tried as it should have been on plaintiffs' behalf; that the firm of Smith & Murasky was retained as substitute

attorneys, and that Mr. Smith of that firm attended at the trial, but that about that time he was appointed colonel of the First California Infantry Volunteers, which made it necessary for Mr. Murasky, his partner, to take up the case without any previous knowledge of it, and prepare the brief for plaintiffs after the cause was submitted to the court; that Mr. Murasky was a candidate for an office about that time, and was elected, and he, too, gave up the case after he had prepared and submitted his brief, and the statement and motion had to be prepared by his successor, the present counsel.

It is no doubt true that enforced changes in counsel during the progress of a case sometimes are most unfortunate, although not always necessarily so. We think, however, that the facts as shown to the court warranted its conclusion that no injury resulted to plaintiffs' cause by a change of counsel, and that plaintiffs were not wholly blameless for Mr. Deuprey's withdrawal from the case. Mr. Deuprey made affidavit that the trial was continued once at his request, and that, before the day of trial arrived, he demanded a fee for his services, which was refused on the ground that he had been amply paid in the slander suit, and ought not to expect pay in this action. He refused to take plaintiffs' view of the matter, but nevertheless accompanied Mr. Smith to Santa Cruz and took part in the trial at the day fixed. He deposed that he imparted to Mr. Smith fully all the facts relating to the litigation and the law involved, as he understood it, and that Mr. Smith was fully equipped to conduct the case. A further continuance became necessary, and because his clients refused him any compensation in this action, Mr. Deuprey drew out of the case and Mr. Smith conducted it to the close of the evidence, when it was submitted upon briefs to be thereafter prepared. It was at this point he became colonel of the First California, although his regiment was not mustered in for several months thereafter, during which time it is shown that he continued in active practice. The first day of the trial was July 17, 1897, and the cause was then continued to September 8, 1897, giving Mr. Smith ample time for preparation. The testimony was written out, and placed in his hands September 23, 1897, and his regiment was not mustered in until the following April.

In an affidavit by Matt I. Sullivan, Esq., one of the attorneys for defendant, it is stated that the cause was continued the second time, by agreement, to July 31st, and from time to

time, for the mutual accommodation of counsel, until September 8, 1897, when "Colonel Smith appeared alone as counsel for plaintiffs, announced himself as ready to proceed with the trial, made no suggestion whatever indicating surprise or accident, made no motion for a continuance, but proceeded with the case in a manner indicating that he was fully prepared to represent his clients"; that the cause was submitted to the court upon the evidence, upon briefs to be prepared and sent to the court. Affiant further stated that Colonel Smith was actively engaged in the practice of law in San Francisco for several months after the submission of the case, to affiant's personal knowledge.

The briefs found their way to the court in July, 1898, and the findings were filed and the judgment entered on August 19, 1898. There is no satisfactory explanation of Colonel Smith's failure to brief the case. With the transcript before him, and an opportunity to consult with Colonel Smith about the case after the trial, if not before, it is not likely that plaintiff's case failed to be well and fully presented by Mr. Murasky. All the matters, of which the foregoing is a brief summary, were submitted on the motion to the trial judge, who was in a position to determine whether there had been any miscarriage of justice. A careful examination of all the facts, the salient features of which have been given, fails to convince us that there was any abuse of discretion in denying the motion.

4. The court found that the deed of Chalmers to his wife "was without consideration whatever, and was made with intent to hinder, delay, and to defraud said defendant Sheehy of his demand against said William P. Chalmers, and was made in anticipation of judgment that might be rendered against said William P. Chalmers in said action of Sheehy *v.* Chalmers" (the slander suit). It was further found that at the time the transfer was made, Chalmers owned no property, except his interest in the land in dispute, out of which execution could be satisfied in whole or in part, and that Chalmers "is now, and at the time the transfer was made, and until said sheriff's sale, was, without any property whatever, other than said" interest, and that the deed to plaintiff Mrs. Chalmers "is void as against said defendant James Sheehy."

Appellants insist that the evidence does not support these findings. Appellants claim the law to be, "that no third

party can question the validity of a conveyance from the husband to the wife, unless he was a creditor of the husband before the conveyance was made, or was a subsequent purchaser without notice"; that the slander suit had not been tried when Chalmers executed the deed, and Sheehy, therefore, was not a creditor within the statute of frauds. It is also contended that there was no evidence of Mrs. Chalmers's participation in or knowledge of the fraud of her husband, if it be conceded that he acted fraudulently, and therefore the decision was erroneous.

Mr. Freeman says "that one having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, is, upon recovering judgment, entitled to avoid a fraudulent transfer antedating the commencement of his action." (Freeman on Execution, 4th ed., sec. 137a. See Bump on Fraudulent Conveyances, secs. 502, 503; Waite on Fraudulent Conveyances, 3d ed., sec. 90; 8 Am. & Eng. Ency. of Law, p. 750. See also sections 3429 and 3430 of the Civil Code, as to who are creditors and debtors, and *Melvin* v. *State*, 121 Cal. 16, where it is said that the term "debt," used in our statutes, "should be given its modern legal significance, as including any sort of obligation to pay money." The cases are very numerous where it is held that a cause of action based upon a tort is within the statute against fraudulent conveyances, and that a person having such a cause of action is a creditor of the wrong-doer before judgment is obtained. The following are cases where it was so held, and where the liability was for slanderous words: *Walradt* v. *Brown*, 1 Gil. 397;[1] *Lillard* v. *McGee*, 4 Bibb, 165; *Langford* v. *Fly*, 7 Humph. 585; *Shean* v. *Shay*, 42 Ind. 375;[2] *Jackson* v. *Meyers*, 18 Johns. 425; *Boid* v. *Dean*, 48 N. J. Eq. 193; *Cooke* v. *Cooke*, 43 Md. 522; *Miller* v. *Dayton*, 47 Iowa, 312.)

The principle has been applied to other forms of torts or causes of action arising *ex delicto*, and it is held that the injured party becomes a creditor when the cause of action accrues. (*Bongard* v. *Block*, 81 Ill. 186;[3] *Petree* v. *Brotherton*, 133 Ind. 692; *Weir* v. *Day*, 57 Iowa, 84; *Schaible* v. *Ardner*, 98 Mich. 70.)

Appellants' contention that participation in the fraud on

[1] 41 Am. Dec. 190.    [3] 25 Am. Rep. 276.
[2] 13 Am. Rep. 366.

the part of the grantee, Mrs. Chalmers, must be shown, is equally untenable, for it is not pretended that the deed to her was other than a gift, pure and simple, and there is evidence to sustain the finding that Chalmers was then, and has been since, unable to meet his liabilities, and owned no property at the time of or since the execution, levy, and sale to Sheehy, other than the land in dispute. The facts are unlike those in *Cook* v. *Cockins*, 117 Cal. 140, and other cases cited by appellants.

It is immaterial that Mrs. Chalmers was innocent (*Judson* v. *Lyford*, 84 Cal. 505), or that she did not know the condition of her husband's affairs. (*Threlkell* v. *Scott*, 34 Pac. Rep. 851; Cal., Nov., 1893.) When on the witness-stand, Chalmers was unable to state when he first informed his wife that he had made the deed to her, and was unable to say that he at any time made a manual delivery of it to her, and he stated that he did not know who deposited the deed for record, and he testified that he thought it was prepared in the office of Mr. Deuprey, who was his attorney in the slander suit. As a reason for making the conveyance, he testified that he was advised by another physician to do so, "to avoid the unforeseen consequences of a suit for damages," which it was explained was likely to arise in any physician's surgical practice; but when on cross-examination he was asked if he had been personally threatened with any suit prior to October 3, 1893, on account of any operation performed by him, or on account of any medical treatment of any patient, he could give but one instance, which was the threat of Sheehy to sue him, and that was, not for alleged malpractice, but for falsely circulating a defamatory report concerning Sheehy.

It appeared that Sheehy had loaned Chalmers money, and held his note for $1,050; that, being called on for payment, Chalmers informed Sheehy that he was unable to pay it without mortgaging his interest in the land in dispute, and that he did not want to do that. Sheehy, however, brought suit and attached this land, and the debt was afterwards paid. It is in evidence that, immediately following this suit, which was brought December 1, 1891, Dr. Chalmers made threats that he would blast the reputation of Sheehy; he circulated the story that he had treated Sheehy for a loathsome disease, and on December 3d brought suit against Sheehy for two thousand dollars for medical services, alleged to have been rendered in

treating him for a constitutional disease, and there is evidence tending to show that this was by way of reprisal, and was without merit, for a jury gave Sheehy the verdict, and he recovered judgment for costs. Sheehy promptly brought his action for defamation of character, upon learning of the reported slanderous statements by Chalmers. A witness, who had known Chalmers many years, and had been his friend up to the commencement of the slander suit, testified: "I had a conversation with Dr. Chalmers after the commencement of the slander suit, and before October 3, 1893, in relation to the slander suit. . . . He came to my office one night at eight o'clock, and stayed there until twelve o'clock, and we talked over different matters, and among other things talked over this slander suit. . . . I told him he was very foolish, and would have to pay for it in the end, — that he had property, — and then he remarked, 'He will never get a damned cent of my property. I will fix it so that he will never get a dollar out of it.'"

Other facts appeared, showing that the court was justified in believing that Chalmers's intention was to put the property where Sheehy could not reach it, should he recover; and as it was all the property he had, he would thus prevent Sheehy from collecting anything if he succeeded in obtaining judgment. If we could assume the law to be as claimed by appellants, Chalmers's deed to his wife might have accomplished its evidently fraudulent purpose, but as the law is otherwise, we must hold the effort to have been abortive; the deed was void, and the court did not err in so finding.

There are no errors of law alleged to have occurred at the trial which seem to call for special notice.

The order should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.        Harrison, J., Van Dyke, J., Garoutte, J.

Hearing in Bank denied.