[L. A. No. 1324.  Department Two.—February 23, 1905.]

# A. A. WOOD, Respondent, v. J. F. MOULTON, and HERBERT P. PRAED, Appellants.

INJURY TO LAND—NATURAL FLOW OF WATER—RULE OF CIVIL LAW—CHANGE OF SURFACE FLOW—ACCUMULATION AND PRECIPITATION.—The rule of the civil law as to the natural flow of water has become the settled rule of property in this state.  The owner of higher land has no right for his own relief, to the injury of the owner of lower land, either to divert surface or storm water upon such lower land over which it would not naturally have flowed, nor has he the right, by accumulating the surface waters upon his own lands in ditches or other artificial channels, to precipitate them upon his neighbor's land in larger quantities or in different form from that which they would have had or taken in the course of nature.

ID.—ACTION FOR DAMAGES—CONFLICTING INSTRUCTIONS FOR APPELLANTS NOT INJURIOUS.—In an action for damages for injury to plaintiff's land by the wrongful turning of surface water thereupon by the defendants, where the verdict was for the plaintiff, and the court had properly instructed the jury upon one hypothesis favorable to the defendants appealing, another conflicting instruction more favorable to the appellants than the law justifies is not injurious to them, and such conflict is not ground for reversal.

ID.—VIEW OF PREMISES BY JURY—IRREGULARITIES NOT PREJUDICIAL—ABSENCE OF COMPLAINT BEFORE VERDICT.—Irregularities upon a view of the premises by the jury, which were not prejudicial to the appellants, or of which they had knowledge and made no complaint before verdict to the trial court, having ample opportunity to do so, are not ground of complaint by them after verdict against them.

ID.—NEWLY DISCOVERED EVIDENCE.—Newly discovered evidence which is merely cumulative or designed to contradict witnesses does not warrant a new trial.

ID.—REFUSAL OF REQUESTED INSTRUCTION—SOURCE OF DAMAGE—DITCH—MATTER NOT WITHIN ISSUE.—Where there was no issue presented by the answer as to whether any part of the damage caused by the precipitation of accumulated surface water from defendants' land across a ditch was caused in part by the flow of waters from the ditch, a requested instruction that the jury should, in considering the question of damage, determine whether any part of it was caused by waters flowing on to plaintiff's land over which they had no control, was properly refused.

ID.—INJURY CAUSED BY ACTS OF DEFENDANTS—OWNERS OF DITCH NOT JOINT TORT-FEASORS.—Where it clearly appeared that the ditch would have carried away all the natural storm water from plaintiff's land, if it had not been obstructed and damaged by the sand

and gravel washed into it by defendants' acts, it cannot be reasonably contended that the owners of the ditch were joint tort-feasors with the defendants.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. Waldo M. York, Judge presiding.

The facts are stated in the opinion of the court.

Collier & Carnahan, and O. P. Widaman, for Appellants.

Purington & Adair, for Respondent.

HENSHAW, J.—Defendants are the owners of a large tract of land. Plaintiff's land (twenty acres in extent) is contiguous to, and lower in elevation than, defendants' land. It is charged that defendants in preparing their land for cultivation changed the course of surface water which in times of rain accumulated in a ravine in the hills upon their property, erected an embankment across the original wash which these surface waters followed, and constructed a new channel for them to the canal of the Riverside Water Company. The result was, that under a heavy rainfall the waters rushed over the land and down the channel into the canal of the Riverside Water Company, filling it with mud and other débris and, breaking over the canal, continued their way across defendants' land and on to plaintiff's land, doing damage. It was charged that but for the interference by defendants with the natural flow of the surface waters they would never have reached plaintiff's land. The action was brought to recover damages and to compel the defendants to abate the embankment and channel as a nuisance, and to restore the original channel to its earlier condition. A jury trial was had and the jury returned their verdict for plaintiff in the sum of one thousand dollars. Judgment for plaintiff in that amount followed. No disposition of any kind seems to have been made of plaintiff's prayer for a mandatory injunction and other equitable relief, and as the case is presented to us it is simply an action at law for damages to real property.

Appellants' principal contention is, that under the statutes of this state (Stats. 1850, p. 219) and under section 4468 of the Political Code, as the common law of England is made

the rule of decision in this state where not repugnant to or
inconsistent with our constitution or laws, the defendants'
acts in ridding themselves of this storm-water were entirely
consistent with their rights, and if plaintiff suffered damage
therefrom it was *damnum absque injuria.* Such, indeed, was
the rule at common law, but, by a long course of decisions in
this state consistently adhered to, the rule of the civil law has
been adopted and has become our rule of property. (*Ogburn
v. Connor,* 46 Cal. 346;[1] *Learned* v. *Castle,* 78 Cal. 454; *Mc-
Daniel* v. *Cummings,* 83 Cal. 515; *Gray* v. *McWilliams,* 98
Cal. 157;[2] *Los Angeles Cemetery Assn.* v. *City of Los An-
geles,* 103 Cal. 461; *Rudel* v. *Los Angeles County,* 118 Cal.
281; *Cushing* v. *Pires,* 124 Cal. 663; *Larrabee* v. *Cloverdale,*
131 Cal. 96; *Sanguinetti* v. *Pock,* 136 Cal. 466.[3])

In *Los Angeles Cemetery Assn.* v. *City of Los Angeles,*
103 Cal. 461, the differences and distinctions between the rule
at common law and that at civil law having been pointed out,
it is said: "In a considerable number of states of our union,
California included, the doctrine of the civil law has been
substituted for the common-law rule."

In *Cushing* v. *Pires,* 124 Cal. 663, it is said: "It is the
settled law of this state that a land-owner cannot protect his
own land to the injury of another's land by turning the storm
or surface water which would naturally flow thereon away
from his own and on to the lands of another."

It follows, therefore, that the owner of higher lands has
no right, for his own relief, either to divert surface or storm
waters from his lands on to the lands of another, over which
they would not naturally have flowed, nor has he the right by
accumulating the surface waters upon his own lands, in ditches
or other like artificial channels, to precipitate them upon his
neighbor's land in larger quantities or in different form from
that which they would have had or taken in the course of
nature. The rule of this state is the rule of the civil law,
*Aqua currit, et debet currere, ut currere solebat,* and we have,
moreover, modified, to meet our conditions, the harsh and
drastic common-law maxim of *Cujus est solum, ejus est usque
ad cœlum, et ad inferos,* by applying with it the more be-
nign and equitable rule of *Sic utere tuo ut alienum non lædas.*

---

[1] 13 Am. Rep. 213.          [3] 89 Am. St. Rep. 169.
[2] 35 Am. St. Rep. 163.

Appellants complain of instructions given by the court, but the gravamen of their complaint is, that the instructions embodied the rule of the civil law and not that of the common law, and, for the reasons already given, their point is not well taken. In particular, however, appellant complains that there are contradictory instructions.

Instruction 6 is as follows: "If you find that the defendants in this case, in a reasonable manner and for the proper cultivation and improvement of their own land, confined the surface or flood waters flowing down upon their tract through a surface water channnel (at certain points spreading out over their tract and assuming various channels) into one channel, and carried the same in substantially the same channel in which the water flowed naturally across their land without substantially increasing the volume of water therein, then you are instructed that defendants were exercising a legal right," etc. In instruction 8 the jury were advised: "Defendants had the right . . . to confine the two or three channels in one and so carry said waters along and over said tract, thus directing it into its natural channel lower down on defendants' land, even though such change might throw increased waters into said natural and customary channel below." It is not easy to perceive why the court should have given these two instructions so obviously conflicting, but appellants have no just cause for complaint. The 6th instruction fairly stated the law. Appellants certainly are not injured because in a later instruction the court laid down a rule more favorable to them than the law justifies.

The jury, under instructions of the court, were sent, with Francis Cuttle and J. R. Cuttle, in custody of the sheriff, to view the premises. Testimony had been offered by the defendants on the trial to prove that no wash had ever crossed a certain street, thus contradicting evidence upon that point offered by plaintiff. The evidence of defendants was that holes had been dug about three feet deep along the street for a hundred feet or so, and that there was no indication of sand at all; it was rich ground, loam. When the jury reached this point a laborer was filling the last of the holes. Upon being asked why he had done so he offered to dig some more. He then proceeded to dig at that point and made a hole about fifteen or eighteen inches deep. While the digging was

going on several of the jurymen stood about watching the result of the work and noticing the soil as it was exposed, and finally one of the jurymen said that that was sufficient, and the digging ceased. We do not perceive how this, if it be treated as an irregularity, could have been prejudicial to the defendants. There had been no denial of the testimony of their witnesses that there was no indication of sand in the soil which had been dug from the holes, and except upon the theory that defendants' witnesses were false or mistaken in their testimony defendants could not be prejudiced by the digging of a hole at this particular spot. Defendants next complain because J. R. Cuttle, while on the ground with the jury, "stated, or endeavored to state, what his testimony had been on the trial as to where the water was accustomed to run." J. R. Cuttle was the superintendent of the defendants, and had been called as a witness by them, and had given evidence in their favor. However improper the effort of Cuttle may have been, it is impossible to see how appellant could have been prejudiced by it. It is not pretended that in his attempt to state what his evidence had been he changed his view in any way adverse to defendants' contention. Moreover, it does not appear that the witness succeeded in his attempt. So far as defendants' rights are concerned, the irregularity was one which did not impair them, and one therefore of which they have no just cause of complaint.

A more serious objection is that presented by the following facts: Francis Cuttle, who also accompanied the jury, stated in reply to the question of one of the jurymen, "Where did the water run across here before the land was improved?" —"It did not run here at all." The court, in sending the Cuttles with the sheriff in charge of the jury, instructed them that they were to express no opinion in regard to the matter or to give any evidence, "except to answer questions which they may ask with regard to the points involved, and the sheriff will go with the jury to see to it that no one is allowed to talk to them in regard to the case except these two gentlemen." Francis Cuttle had already testified to the same matter in court, and it might be said that this question and answer were fairly within the instructions given by the court, and amounted to no more than pointing out upon

CXLVI. Cal.—21

the ground the facts to which he had testified in court. Be this as it may, however, appellants cannot be heard to complain. They knew of the irregularity at the time, and had ample opportunity to call the court's attention to it before a verdict was rendered. They chose, however, to remain silent and trust to the chance of a verdict, and that verdict having been unfavorable to them, they will not at this late day be allowed to urge the irregularity. In *Monaghan* v. *Rolling Mill Co.*, 81 Cal. 190, it is said: "This circumstance was known to appellant at the time of its occurrence, and no objection was made; and he could not thus remain quiet and take the chance of a favorable verdict, and keep this point in reserve." (See, also, 17 Am. & Eng. Ency. of Law, 2d ed., p. 1206; 1 Hayne on New Trial and Appeal, sec. 27; *Ipswich* v. *Fernandez*, 84 Cal. 639.)

We perceive no error of the court in the admission or rejection of evidence that calls for special notice, nor can it be said that the court was in error in refusing a new trial upon the ground of newly discovered evidence. There is not a sufficient showing of diligence, and the evidence itself is, in its nature, cumulative and designed to contradict the plaintiff's witnesses. The rule is that newly discovered evidence which is merely cumulative or designed to contradict witnesses is not of a character to warrant granting a new trial. (*People* v. *Anthony*, 56 Cal. 397; *Chalmers* v. *Sheehy*, 132 Cal. 459.[1])

In a supplemental brief appellants make an additional point that the court erred in refusing to give an instruction to the effect that, in considering the question of damage, the jury should determine whether any part of the damage was caused by waters flowing on to plaintiff's land from other sources over which defendants had no control, and that, if they so found, defendants were liable, if liable at all, only for that portion of the damage caused by water wrongfully diverted by them. This instruction was addressed to a contention that the waters of the Riverside Water Company's ditch intermingled with the waters from defendants' land, and that the damage was caused, at least in part, by waters from this ditch. But there was no issue presented by the answer of the defendants that any part of the damage was caused by

[2] 84 Am. St. Rep. 62.

waters flowing on to plaintiff's land from other sources over which they had no control, and it is made to appear very clearly that the ditch was capable of carrying the natural storm-waters, if it had not been obstructed and damaged by the sand and gravel washed into it by defendants' acts. It cannot reasonably be contended under this state of the case, therefore, that the owners of the Riverside Water Company's canal, to which reference in the instruction is made, were joint tort-feasors with defendants.

For the foregoing reasons the judgment and order appealed from are affirmed.

Lorigan, J., and McFarland, J., concurred.

Hearing in Bank denied.