[Civ. No. 704. Fourth Appellate District.—April 1, 1932.]

T. A. BENNINGTON, Respondent, v. NATIONAL PACKING COMPANY (a Copartnership), Appellant.

Greenberg & Beilenson for Appellant.

George H. Moore and Gerald O'C. Egan for Respondent.

LAMBERT, J., *pro tem.*—In this case the plaintiff and respondent, T. A. Bennington, brought an action against defendant and appellant, National Packing Company, a co-partnership consisting of L. A. Chudacoff and Max Goldring, for injuries sustained in a collision with an automobile belonging to the defendants, and driven at the time by L. A. Chudacoff. The case was tried by the court sitting with a jury, and the jury returned a verdict in favor of plaintiff for $15,000. The defendants made a motion for a new trial on all the statutory grounds; the motion was denied. Appellant appealed from the judgment and order denying the new trial. The sole point made on this appeal, and for which we are asked to reverse the judgment is that the trial court abused its discretion in not granting a new trial on the grounds of newly discovered evidence.

The only witnesses as to how the accident happened were the plaintiff and the defendant Chudacoff, and each claimed it was the other's fault. The accident took place at the intersection of Sixth and St. Louis Streets, in the city of Los Angeles. Sixth Street runs east and west and St. Louis Street runs north and south. The plaintiff was driving a Ford coupe west on Sixth Street and defendant was driving a Ford sedan on St. Louis Street. Sixth Street slopes downward toward the intersection and St. Louis slopes upward toward the intersection, so that just prior to the accident plaintiff was going downhill and defendant Chudacoff uphill. Sixth Street, east of St. Louis, is forty feet from curb to curb, and west of St. Louis Street is twenty feet from curb to curb. St. Louis Street, both north and south of Sixth Street, is forty feet from curb to curb. The plaintiff's testimony was to the effect that when he was thirty-five or forty feet east of the intersection he first saw the defendant Chudacoff 325 feet north of the intersection, and that he was traveling forty-five miles an hour, and that he slowed down very little as he approached the

intersection. That, plaintiff, when he first observed the defendant, was traveling five to ten miles per hour; that he was going five miles per hour when he entered the intersection and was going about seven miles per hour at the center of the intersection. He kept his eye on defendant until he reached the center of the intersection, at which time the defendant was still forty or sixty feet north of the northerly curb line of Sixth Street. Before the car reached the westerly curb line of St. Louis Street it was struck by defendant's car.

The defendant's testimony was, when his sedan was about ten feet from the intersection the plaintiff's coupe was about fifty feet from the intersection. That his car was going fifteen to twenty miles per hour, slowed down as he approached the intersection, and had almost stopped at the time of the accident; that his sedan was first in the intersection; that plaintiff's coupe was coming at a speed of forty miles per hour, swaying from side to side as though the driver had lost control of it, and did not slow down at all, and, still going at this high rate of speed, struck his sedan.

On the motion for new trial the defendants presented the affidavit of James Hoag, who claimed to be an eye-witness of the accident, and whose affidavit corroborated, in all particulars, the testimony of the defendant Chudacoff. There was also presented the affidavits of Mrs. Kitty Manheimer, Leonard A. Chudacoff and Rose Chudacoff, his wife. These affidavits set forth the facts and circumstances showing the defendant's reasons for not producing the witness Hoag at the trial. The affidavit of Kitty Manheimer set forth in substance that she conducted a rooming-house at 812 West Tenth Street, in the city of Los Angeles; that she was personally acquainted with James Hoag and that he lived at her rooming-house in June, 1926, and left her place September 1, 1926; that while Hoag lived at her house, somebody unknown to her called her on the telephone a number of times and asked for James Hoag, and that on each occasion he was not at home; that thereafter a man called at her house looking for a man who had witnessed an automobile accident at Sixth and St. Louis Streets, but that she could not recall his name; that on September 28, 1927, a woman, stating she was Rose Chudacoff, came to her rooming-house and talked to her at length; that in the

course of the conversation affiant mentioned the name of Jimmie Hoag, and that Rose Chudacoff immediately said, "Jimmie Hoag, that was the name of the witness"; that affiant then told Rose Chudacoff where the witness Hoag could be located; and that she recognized Leonard E. Chudacoff as the man who had previously called at her home making inquiry about Jimmie Hoag.

Leonard E. Chudacoff in his affidavit deposes, among other things, that he was in the hospital about eleven weeks following the accident; that while in the hospital he learned that one of the employees of the hospital was an eye-witness to said accident, but he did not learn his name before he left the hospital; that when he left he requested the manager of the hospital to ascertain the name of the witness, if possible, and advise him at his office; that about two months after he left the hospital somebody telephoned the name of the eye-witness was Jimmie Hoag and that his address was 812 West Tenth Street, Los Angeles, and also gave the telephone number at said address; that the name and address were taken by his secretary and written on a piece of paper and given to him; and that he took it home and placed it in a dresser drawer, and that it afterwards became lost. Here an extract from the affidavit is as follows:

" . . . affiant was never able thereafter to find said paper and was not able to remember the name of said witness; that before losing the name and address and telephone number of said Jimmie Hoag affiant called said telephone number several times but was unable to get in touch with Jimmie Hoag, it being stated on each instance that he was away; that affiant stated to the party who answered the telephone at the said address that he wanted to talk to said Jimmie Hoag about the accident which had occurred at Sixth and St. Louis streets; that a short time after receiving said name and address affiant drove past the address given on said paper and at said time affiant's said wife, Rose Chudacoff, was with him, and affiant pointed out the said house, stating that it was the house where the man who had witnessed his accident lived; that thereafter affiant lost said paper, containing the name and address of said witness; that the time when affiant drove past said house was a very short time after receiving said name and address;

that shortly thereafter, upon looking for said name and address, affiant discovered that he had lost said name and address, and on numerous occasions thereafter affiant endeavored to find said paper, containing said name and address, but was unable to do so; that after losing said name and address affiant could not remember the name of said witness and therefore called at said address, 812 West Tenth Street, being able to recall the house on account of having previously driven past there and noted said house, and made diligent inquiry from the landlady at said address in an endeavor to locate the man who had witnessed his said accident; but, although affiant made such diligent inquiry, said landlady was not able to enlighten him as to the identity of said witness; that affiant had never seen said Jimmie Hoag, to know him by name, and was not even able to describe him to said landlady, and that the only information he could give the landlady was that affiant was looking for a man who had witnessed his automobile accident and who worked at the Santa Fe Hospital. . . . ''

The rest of the affidavit is not material, being merely a corroboration of Kitty Manheimer's affidavit. The affidavit of Rose Chudacoff corroborated the affidavit of her husband and Kitty Manheimer in some particulars.

 In order that we may reverse the order of the trial court it must affirmatively appear to this court that the trial court abused its discretion in denying the motion for new trial. The rule governing appellate courts in passing on the action of the trial court in denying a motion for new trial upon the ground of newly discovered evidence is thoroughly settled and clearly stated in *Baule* v. *Drobatz*, 6 Cal. App. 594, at 596 [92 Pac. 666, 667], as follows:

''It is sufficient to say that the question of whether newly discovered evidence could with reasonable diligence have been discovered and produced at the trial, and the question whether if it had been produced, a different conclusion might have resulted, were questions addressed to the sound legal discretion of the trial court, and its action will not be disturbed unless it appears that its discretion has been manifestly abused. (*Oberlander* v. *Fixin*, 129 Cal. 690 [62 Pac. 254]; *People* v. *Buckley*, 143 Cal. 392 [77 Pac. 169]; *People* v. *Sing Yow*, 145 Cal. 4 [78 Pac. 235].)''

In *Wood* v. *Moulton*, 146 Cal. 317, at 322 [80 Pac. 92, 94], it is said: "There is not a sufficient showing of diligence, and the evidence itself is, in its nature, cumulative and designed to contradict the plaintiff's witnesses. The rule is that newly discovered evidence which is merely cumulative or designed to contradict witnesses is not of a character to warrant granting a new trial. (*People* v. *Anthony*, 56 Cal. 397; *Chalmers* v. *Sheehy*, 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709].)"

Also, in *Estate of Walden*, 166 Cal. 446, at 450 [137 Pac. 35, 37]: "We cannot say that the court below abused its discretion in denying the motion for a new trial so far as it was based on newly discovered evidence. All of the new evidence presented comes within the well-established rule that the trial court may, in its sound discretion, refuse a new trial upon this ground, where the new evidence is merely cumulative, or where it tends merely to impair the credibility of the evidence of the prevailing party. (*Chalmers* v. *Sheehy*, 132 Cal. 462 [84 Am. St. Rep. 62, 64 Pac. 709]; *People* v. *Goldenson*, 76 Cal. 352 [19 Pac. 161]; *Wood* v. *Moulton*, 146 Cal. 322 [80 Pac. 92]; *Stoakes* v. *Munroe*, 36 Cal. 388; *People* v. *Weber*, 149 Cal. 350 [86 Pac. 671].)"

In this connection it must be borne in mind that the accident happened on April 27, 1926, and the case was tried September 27, 1927, and that the witness was found one day after the trial, and also that the defendants asked for no continuance before the case was tried on account of the missing witness.

Now, the evidence of Hoag only contradicts the evidence of the prevailing party, and comes squarely within the rule above stated. It shows not new evidence, but a new witness with the same evidence as given by the losing party. We have examined the record, and while the appellant made a better showing before the trial court than is usually the case in such matters, it would be merely speculation on our part to attempt to say that at another trial, with this new witness, a different result would ensue.

Furthermore, the court was justified in refusing to grant a new trial, for lack of diligence. The defendant was not justified in relying merely on the telephone calls to locate what, to him, seemed to be such an important witness, and it also seems rather unusual, to say the least,

that although he made several telephone calls, on each occasion asking for the witness Hoag, that he should then entirely forget the name, yet remember the street address; also absolute forgetfulness of the witness' name is no more excusable than absolute forgetfulness by a witness of matters to which he might have testified at the trial, and is no reason for granting a new trial. (*Fresno Estate Co.* v. *Fiske,* 172 Cal., at 600 [157 Pac. 1127].)

However, we are not required to speculate as to just what actuated the trial court in his ruling. So long as the case presents a reasonable or even debatable justification under the law for the ruling of the court, such action will not be interfered with here, irrespective of what our own ideas might be as to the propriety of the court's action. Obviously the trial court is in a much better position to reach a just conclusion on the hearing of such a motion than we could possibly be. He has seen and heard the witnesses and observed the jury, and we will not attempt to set our judgment against his so long as the question is debatable.

We have not overlooked the cases cited by appellant, but they are not applicable to the instant case. ██ The appeal from the order denying a new trial not being an appealable order, is dismissed. The judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.