[Civ. No. 14029. Second Dist., Div. One. July 7, 1943.]

KATE E. SHIVERS, Appellant, v. WARREN B. PALMER, Respondent.

Kiggens & Hoffman and Elmer H. V. Hoffman for Appellant.

Paul Nourse and Pat A. McCormick for Respondent

WHITE, J.—Plaintiff commenced this action to recover damages for the wrongful death of her husband, John Hyman Shivers, allegedly resulting from the negligence of defendant Warren B. Palmer in the operation of his automobile. Because he refused to join with plaintiff in the action, Gilbert Shivers, a brother of the decedent, and the surviving heir at law, was also named as a party defendant.

By her amended complaint plaintiff alleged that about 7 o'clock on the evening of September 20, 1940, the decedent was driving his Packard automobile in a westerly direction along Garvey Boulevard, West Covina, in the county of Los Angeles. That defendant Palmer was operating his Hudson automobile on the same highway in an easterly direction in a negligent, careless and reckless manner; at an excessive rate of speed, without due or any regard for the safety or convenience of other users of the highway. That as a result of defendant Palmer's negligence, his automobile collided head on with the vehicle operated by plaintiff's husband, resulting

in the death of the latter. By his answer defendant Palmer denied plaintiff's allegations of negligence and by way of separate defense pleaded contributory negligence on the part of the decedent. This affirmative defense of contributory negligence, however, may be disregarded as it is conceded that in view of the evidence thereon, the court correctly directed the jury to find against the defendant upon such issue.

The trial was had before a jury which returned a verdict for the defendant Palmer. Plaintiff moved for a new trial on the ground of newly discovered evidence and for the asserted reason that the court erred in its instruction to the jury that no insurance company was ''a party to or involved in this lawsuit.'' The motion for a new trial was denied and this appeal is prosecuted by plaintiff from the judgment entered upon the verdict.

The facts disclosed by the record may be thus epitomized: Defendant Palmer testified that on the evening in question he was driving his sedan easterly on Garvey Boulevard near the intersection of Willow Avenue; that his headlights were on, and that he was traveling in the center of lane 3, as indicated on a map used at the trial. On this map the lanes were designated 1, 2, 3, and 4; number 1 lane being the most northerly lane; lane 2 being between lane 1 and the center of the highway, lane 3 being the first lane south of the center of the highway, and lane 4 being the most southerly lane. When he was about 300 feet from the point of the first impact (with a vehicle driven by one Louis Somers) he particularly noticed a car approaching him from the east, which car was on the southerly side of the center lane; that to avoid hitting the car so approaching, he veered to the south but discovered that if he continued in that direction he would collide with this vehicle, so he abruptly turned to the left or north. He then sideswiped the car on its right side and went over the double center line into lane 2 and almost into lane 1. He then swung around and came back into lane 3 when he was struck by a second car (the vehicle operated by the deceased). At the time of the impact with the first car (Somers' car) ''my entire car was south of the double center line'' and the other car in its entirety was south of the double center line. After my car collided with Mr. Somers' car, I tried to get it under control and get it back in my lane. That is what I was doing when the collision with Mr. Shivers' car occurred.'' Defen-

dant testified his health was good, that he had nothing to drink, that he was not sleepy or suffering from drowsiness.

Two witnesses for plaintiff testified that they saw defendant's car east bound, swerve over the double line and go into lane 1, but that they did not observe any collision between the vehicles of defendant and Mr. Somers.

Mr. Somers' version of the accident, testifying as a witness for plaintiff, was that he was traveling in lane 2 in a westerly direction, when he first observed defendant's car approaching in an easterly direction in lane 3, when it was about 400 feet down the road. That suddenly defendant whirled to the left, going over into lane 1; then he came back between lane 1 and lane 2 "almost directly toward me." That there was an impact and defendant's front right-hand wheel ran up on Somers' left-hand running board, and spun his car around so that when it came to rest it was headed east. That this impact occurred on the north side of the center line. Defendant Palmer testified it occurred on the south side of the center line.

The evidence indicates that after Palmer's car collided with Somers' car, a second collision took place between Palmer's car and that operated by the deceased, and that deceased's car was then hit by a fourth car operated by Anthony Graves, who was following immediately behind the deceased's car. Mr. Graves testified he did not see the collision between the Palmer car and the Somers car, but that he did see some "cars up ahead kind of swaying I think about—it seemed like about 300 to 400 feet ahead" . . . in lanes 1 and 2.

We shall first give consideration to appellant's contention that the trial court fell into error in denying her motion for a new trial on the ground of newly discovered evidence; and which claim is presented by counsel with great earnestness. ■ At the outset we are confronted with the settled rule that the claim of newly discovered evidence as a ground for, or warranting, a new trial is universally looked upon by the courts with distrust and disfavor. For reasons of public policy, a litigant is required to exhaust every diligent and reasonable effort to produce at his trial all existing evidence in his behalf. The fact that the testimony has just been discovered when it is too late to introduce it, has been characterized as a circumstance so suspicious that the very strictest showing of diligence is required by the courts (*People* v. *Freeman,* 92 Cal.

359, 366 [28 P. 261]). It is, however, recognized that cases will occur where, after trial, despite the exercise of such effort, new evidence most material to the issues and which would probably have produced a different result, is discovered. The remedy of a motion for a new trial on the ground of newly discovered evidence has been given and is afforded for such cases. As declared by subdivision 4 of section 657 of the Code of Civil Procedure, the court may grant a new trial when there is presented ''newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.'' Public interest requires that there be an end to litigation and a new trial is not warranted for the purpose of enabling a party to produce further evidence unless he has shown some legally justifiable excuse for not having produced such evidence at the former trial. With reference to the degree of reasonable diligence required in such cases, we need but cite *Bennington* v. *National Packing Co.*, 122 Cal. App. 313 [9 P.2d 857]. We think it may be conceded that the newly discovered evidence in the instant case was competent and material; that it was not solely impeaching; certainly not cumulative, and was in fact discovered after the rendition of the verdict. ■ However, the law also requires the use of due diligence on the part of the moving party to discover the evidence prior to the trial, and a clear and convincing showing under all the circumstances of the case that the newly discovered evidence is produced in such a way, and is of such a nature, that its introduction upon another trial would render a different result reasonably probable.

■ With regard to the diligence exercised by appellant, it should here be noted that at the trial a witness, Rial Dennison, an investigating police officer, was asked by respondent's counsel ''There was no liquor involved on anybody's part?'' to which he answered ''Not as far as I knew,'' while defendant Palmer testified directly and unequivocally that on the day of the accident he had taken nothing intoxicating to drink. Appellant's counsel concede that from the first day they undertook the prosecution of this cause, more than a year prior to the trial thereof, they harbored the belief that the defendant Palmer, because of the circumstances surrounding the accident ''must have been drunk or asleep.'' By their affidavits in support of the motion for a new trial, appellant's

counsel represented that in preparing the case for trial they employed a paid investigator, examined the transcript of testimony taken at the coroner's inquest concerning the death of decedent; also the transcript of testimony presented at the preliminary examination of defendant Palmer on a criminal charge of negligent homicide; that they also attended the trial of defendant Palmer on the criminal charge in the superior court, but that none of those activities upon their part were rewarded with any information to indicate that defendant Palmer was under the influence of liquor or had been drinking at all on the day of the accident here in question. The affidavits filed by appellant's counsel further show that prior to the trial they learned that the accident had been investigated by the Sheriff of Los Angeles County and by Police Officer Rial Dennison of the West Covina Police Department; that they learned that respondent had been taken by private ambulance operated by the Taylor Ambulance Company from the scene of the accident to the West Covina Hospital. The affidavits of appellant's counsel also set forth that inquiry by them of defendant's immediate superior in the office where he was employed elicited the information that defendant Palmer was a ''man of temperate habits and not addicted to the use of liquor so far as he knew.'' That prior to the trial they interviewed Officer Rial Dennison on several occasions and were advised by him that he had found no evidence that respondent was drinking before the accident. The affidavits do not disclose whether the driver of the ambulance was interviewed prior to the trial. That it was not until two days before the trial herein that one of appellant's counsel received any indication that Palmer was drinking on the day of the accident, but upon investigation both persons to whom he had been directed denied that they knew anything about the matter. Two days after the trial, Somers told this affiant that he had heard that Palmer had been previously arrested for drunk driving in San Bernardino but that the charge had been reduced to a misdemeanor and Palmer pleaded guilty, and that Palmer had been drinking on the day of the accident. This information, the affidavits of appellant's counsel aver, was denied to them prior to trial, as Somers refused to make any statement to them and had referred one of appellant's counsel to Somers' attorney. Somers told appellant's counsel that the source of

his information was an investigator in the sheriff's office who originally had charge of the accident case and who had been previously interviewed by affiant's investigator but had failed to divulge the information. That one of appellant's counsel then secured information as to the identity of the party who had been drinking with Palmer on the afternoon of the accident. Vernon Lee's affidavit averred that he and Palmer had spent the afternoon together and they had four or five bottles of beer and three or four cocktails. Lee, according to the affidavit of appellant's attorney, was induced to make a statement only when he was informed that plaintiff had not secured any remuneration on account of the death of her husband, but that prior to the trial Lee had stated, when asked whether he smelled liquor on Palmer's breath just prior to the accident, ''Well he was smoking a strong pipe—and it would have been hard to tell—you know he could have had a drink and I wouldn't have smelled it.'' As a further result of their post-trial investigation appellant's counsel obtained and filed an affidavit made by Norman Whitlatch wherein he stated that he was in charge of the ambulance that conveyed Palmer to a private hospital following the accident here in question, and that he concluded ''Palmer had been drinking intoxicating liquor as the smell of liquor was very distinct about his breath. The odor of liquor was strong. I could and did smell it when we put Palmer on a cot, preparatory to loading him into the ambulance and when we loaded him into and out of the ambulance at the hospital.'' This affiant further stated that he did not consider himself privileged to divulge these facts while he was employed by the ambulance company, but that such employment had been terminated at the time he signed the affidavit. Appellant's counsel in their affidavits stated that they did not make inquiry at the hospital or of the ambulance company because they were advised by the police and sheriff's departments that neither the ambulance company nor the attending physician would give any information as to respondent Palmer's sobriety. There was also filed an affidavit by Mrs. H. M. Walker that ''Some time in the fall of 1940 when the Pomona Fair was in progress— exact date I don't remember Warren Palmer & Vernon Lee came to our office at 10:30 Garvey Blvd. El Monte and invited us to have a drink so my husband and I accompanied

them over to the Golda Lee Bar at 5 Points El Monte—we all had a cocktail—we stayed a few minutes then went outside where Lee got into Palmers car and drove away." Because of its uncertainty, little evidentiary value can be attached to the contents of this affidavit.

The averments contained in the affidavits of Vernon Lee, Norman Whitlatch and Mrs. H. M. Walker as to his drinking were categorically and specifically denied by respondent Palmer in a counter-affidavit filed by him, while Officer Rial Dennison in his affidavit filed in opposition to the motion for a new trial, deposed that within a week following the accident he had a conversation with Vernon Lee wherein he, the affiant, "particularly asked Mr. Lee as to whether or not the said Lee had seen Mr. Palmer on the day of the accident and the said Lee told your affiant that he had seen the defendant Palmer and he further stated unqualifiedly to your affiant that the said Palmer had not been drinking in his presence and further that to his knowledge the said Palmer had had nothing to drink at the time he, the said Lee, had last seen him."

█ The term "diligence" has been said to be incapable of exact definition because it is a relative term, and therefore, in defining it, recourse must be had to the particular circumstances of each case in which the question of whether it was used arises *(Parker* v. *Southern Pacific Co.,* 204 Cal. 609, 618 [269 P. 622]). █ Conceding to the trial court a wide discretion, upon a motion for a new trial, in determining whether due diligence has been exercised to procure the newly discovered evidence before the trial, nevertheless, that discretion is a legal one and the proper exercise thereof presents a question of law. █ On the record in this case and the facts and circumstances reflected thereby, it must be concluded that appellant through her counsel did use due diligence prior to trial in an attempt to discover and produce evidence as to the claimed drinking or intoxication of respondent Palmer at the time of the accident. Upon every avenue of investigation made by appellant's counsel, one has but to read of the efforts made by them, to be impressed with the persistency and thoroughness thereof and the fact that they were constantly met either with a refusal to give any information or confronted with the statement by all concerned that no liquor "was involved" in the accident. To

exact a more thorough or painstaking investigation than was made by appellant's counsel in the instant case would be to require a degree of "diligence" rarely if ever attainable under the difficulties encountered and the circumstances herein presented.

We now pass to a consideration of two questions which we feel are in themselves determinative of the question as to whether the order denying a new trial on the ground of newly discovered evidence should be reversed.

Firstly: the credence and weight to be given to the affidavits and counter-affidavits presented on the motion for a new trial is a matter confided to the sound discretion of the trial court. In the instant case the affidavits of Vernon Lee, Norman Whitlatch and Mrs. H. M. Walker were flatly contradicted by the counter-affidavit of respondent Palmer, while the credibility and weight to which the averments contained in Vernon Lee's affidavit were entitled, is specifically impaired by the affidavit of police officer Rial Dennison. As to the affidavit of Vernon Lee, it further appears that he executed the same only after he was assured by a representative of appellant that the latter "Had at no time had any part in the criminal prosecution (of defendant Palmer) and that we were not really after Palmer personally, and had never expected to get anything except from his insurance carrier, to get the widow of the man who was killed what she might have coming" and to which statement affiant Lee replied "That puts a different angle on it. You know I lost my eye a while back. I am thinking about my wife and kids now."

Conceding that the newly-discovered evidence was competent, material, not impeaching or cumulative, nevertheless the verity and the credibility of the makers thereof was contested by counter-affidavits. Evidently the court, after balancing the affidavits on the one side presented by appellant against those of respondent and Officer Dennison, decided in favor of the credibility of the facts sworn to in the latters' affidavits. Under all the facts and circumstances present, this court is not prepared to say that there was a manifest abuse of discretion on the part of the trial court in so doing.

Secondly: we are confronted with the question which was primarily addressed to the discretion of the trial court,

as to whether the evidence offered as newly discovered would, if produced on a retrial of the case, likely and probably bring about a different verdict or result. It is only when the showing made on the motion for a new trial is of such a character as to make it manifest that the case would or should result differently on a retrial, in view of the newly discovered evidence, that the appellate court is authorized to say that the discretion vested in the trial court has been abused (*People* v. *Sing Yow,* 145 Cal. 1 [78 P. 235] ; *Waer* v. *Waer,* 189 Cal. 178, 182 [207 P. 891] ; *Monnette* v. *Title Insurance & Trust Co.,* 107 Cal.App. 313, 324 [290 P. 668] ; *Berkowitz* v. *Kiener Co.,* 37 Cal.App2d 419, 427 [99 P.2d 578] ; *Smith* v. *Schwartz,* 14 Cal.App.2d 160, 166 [57 P.2d 1386].) The trial court heard the witnesses testify. While there was a conflict in the evidence, there was nevertheless testimony which, if believed by the triers of fact, would support a finding that the proximate cause of the accident was the negligence of Somers. With reference to the newly discovered evidence, the trial court was entitled to take into consideration the circumstances under which such testimony was procured, the representations made in its procurement and also the fact that the witness Lee had on other occasions made statements in contradiction of and at complete variance with the averments contained in his affidavit presented on the motion for a new trial. Because the trial court is obviously in a much better position to reach a just conclusion on the hearing of such a motion than we can possibly be, we are not authorized to interfere with the ruling of the trial court whenever the case presents a reasonable or even debatable justification under the law for the ruling made in the trial forum, regardless of what our ideas might be as to the propriety of the court's action. Such a rule is grounded on the fact that the trial court has seen and heard the witnesses and observed the jury. The propriety of the trial court's action in the case at bar under all the circumstances to which we have herein adverted clearly presents a debatable question. We are, therefore, without authority to set our judgment against that of the trial judge.

Lastly: appellant complains that she was seriously prejudiced by a statement of the court advising the prospective jurors on their voir dire examination that an insurance company was not involved in this action. In that regard the

record discloses that early in their voir dire examination of the veniremen appellant's counsel inquired "Are any of you now, or have any of you ever been employed by any company engaged in the business of writing casualty insurance on automobiles? Or have any of you ever been or are you now, or any member of your immediate families, connected as a stockholder, officer or otherwise, with any such company?" Thereupon the court stated: "The court will inform all the jurors in the court room now that there is no insurance company a party to or involved in this lawsuit."

Notwithstanding appellant's claim to the contrary, we do not regard the foregoing remarks of the court as an instruction within the purview and meaning of section 674 of the Code of Civil Procedure and therefore, "deemed to have been excepted to." We are impressed that the statement of the trial judge was no more an instruction than would be the remarks of a trial judge concerning the materiality or effect of evidence as a trial proceeded, while ruling upon objections (*Loeb* v. *Kimmerle,* 215 Cal. 143, 154 [9 P.2d 199]); or remarks by the court bringing to the attention of the jury that the defendants were insured (*Swartz* v. *Acme Express and Drayage Co.,* 102 Cal.App. 615; 619 [283 P. 358]); or statements by the court that a witness is a person of respectability (*Ward* v. *DeMartini,* 108 Cal.App. 745, 750 [292 P. 192]); in all of which cited cases the statements just mentioned were treated as conduct on the part of the court requiring that the error thereof, if any there was, be called to the court's attention by objection so that it might, by instruction or otherwise, correct its error. In order to avail a party claimed to have been injured by an improper statement or remark made during a trial by the trial judge, an exception thereto must be taken by such a party at the time the remark or statement was made, or at some time thereafter prior to the close of the trial (*Hughes* v. *Hartman,* 206 Cal. 199, 206 [273 P. 560]). As was said in the case just cited: "If thus taken an opportunity is given to the trial judge by an instruction to the jury or otherwise to cure the injury occasioned by such remark. This rule might not apply where the remark was of such a character that its prejudicial effect could not be cured by any subsequent action by the trial court. The remark of the court in the present action, of which complaint is made, is not of such character. Defendant, therefore, must be held to have waived any right to except

to the action of the court in making the remark attributed to it, and quoted above, by his failure to object to the same during the trial of the action.''

If therefore, counsel for appellant regarded the statement made by the trial judge as detrimental to their client's cause they should have offered complaint thereto; requested the court to instruct the jury to disregard the remarks made from the bench, or to declare a mistrial. In *Swartz* v. *Acme Express & Drayage Co., supra,* wherein appellants claimed that remarks of the trial judge brought to the attention of the jury that the defendants were insured, it was held, at page 619: ''But they did not object or request an instruction and this forecloses consideration of the point on appeal.''

Appellant concedes that there was no impropriety in the court's statement to the jury that no insurance company was a party to the action. Her objection goes solely to that part of the statement which informed the jury that no insurance company was ''involved'' in the litigation.

We are here confronted with the fact that appellant for the first time on appeal challenges the conduct of the trial court in making the statement complained of. Where, as here, appellant failed by motion, objection or otherwise to call upon the trial court to cure the error and nullify the allegedly prejudicial effect thereof, to declare a mistrial or to summon a new venire, no question can be presented for consideration by the appellate court. That a party deeming himself prejudiced by improper questions, statements or admonitions by the court as to the existence of liability insurance made in the course of an action for personal injury or wrongful death must act promptly in the trial court to protect his rights, and his failure so to do forecloses him from complaint on appeal, was the direct holding in *Crawford* v. *Rose,* 2 Cal. App.2d 734 [39 P.2d 217, 40 P.2d 277]. Where the error is such that its effect would be obviated by an appropriate instruction to the jury by declaring a mistrial or by summoning a new venire, and no such aid is invoked, error cannot be complained of on appeal. Inasmuch as the court was not once, during the impanelment of the jury or during the trial, requested to correct the claimed error, nor was any objection made thereto, when an appropriate admonition would doubtless have been sufficient to obviate any prejudicial effect the court's remarks might have produced, or where the court could have otherwise cured the error, the claimed prejudicial error cannot be considered on appeal.

From the foregoing it follows that the judgment must be affirmed, and it is so ordered.

York, P. J., and Doran, J., concurred.

On August 6, 1943, a petition for rehearing was denied and the opinion was modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied September 1, 1943.